**ENGELHARD CORPORATION, a Delaware corporation, Plaintiff,**

v.

**SAVIN CORPORATION, a Delaware corporation, Defendant.**

Court of Chancery of Delaware, New Castle County.

Submitted: Dec. 19, 1985.

Decided: Jan. 2, 1986.

Charles S. Crompton, Jr., and Donald J. Wolfe, Jr. of Potter, Anderson & Corroon, Wilmington, and John A. Diaz, Alfred P. Ewart, James W. Gould, Joseph A. DeGirolamo, and Dickerson M. Downing of Morgan, Finnegan, Pine, Foley & Lee, New York City, for plaintiff.

William O. LaMotte, III, and Donald F. Parsons, Jr. of Morris, Nichols, Arsht & Tunnell, Wilmington, and Roger M. Milgrim, Daniel Smirlock, and Lawrence I. Weinstein of Milgrim, Thomajan, Jacobs & Lee, New York City for defendant.

## OPINION AND ORDER

JACOBS, Vice-Chancellor.

The defendant, Savin Corporation ("Savin"), has moved for a protective order relating to certain discovery being sought by plaintiff Engelhard Corporation ("Engelhard"). The motion has been briefed and argued. This is the Court's decision on Savin's motion.

### I.

This lawsuit, which Engelhard commenced in October, 1985, stems from a contractual relationship between the parties which began in November, 1982, when Savin contacted Engelhard to assist it in solving certain technical problems involving the creation of an improved liquid ink technology for use in a new high speed office copier which Savin was then developing. Engelhard's Amended Complaint alleges that the parties recognized that the solution of those problems would require a joint research and development effort and a mutual exchange of trade secrets in a fiduciary relationship. Accordingly, the parties entered into a Confidentiality Agreement that prohibited any analysis by Savin of any samples disclosed to it by Engelhard, and any commercial use or disclosure by Savin of trade secrets disclosed by Engelhard to Savin. Engelhard alleges that (a) pursuant to the Confidentiality Agreement, it and Savin jointly developed certain concepts for liquid plain paper copiers that included fusers and afterburner sections, and (b) it developed several experimental materials which it submitted to Savin, in confidence, for testing, and (c) those materials contained Engelhard trade se-

crets which Savin later incorporated into its liquid ink copier. Neither the (unverified) complaint nor any document filed by Engelhard to date, purports to identify the matters which Engelhard claims constitute trade secrets.

Engelhard further alleges that Savin has breached the Confidentiality Agreement, in that Savin has: (i) commercially used Engelhard trade secrets by licensing the copier technology to third parties for 20 million dollars, (ii) obligated itself to disclose Engelhard's trade secrets to third parties, (iii) actually disclosed Engelhard's trade secrets, and (iv) disclosed liquid ink copiers incorporating such trade secrets, to third parties. Engelhard further claims that Savin's alleged conduct also constitutes, in addition to a breach of contract, a misappropriation of its trade secrets and a violation of the Delaware Trade Secrets Act, 6 *Del. C.* § 2001, *et seq.* Accordingly, Engelhard seeks injunctive relief and damages, as well as expedited discovery "to determine the extent to which Savin has displayed or licensed liquid ink technology" or has "otherwise sold, used, or disclosed Engelhard trade secrets."

In its Answer and moving papers, Savin disputes both Engelhard's material allegations and Engelhard's characterization of its contribution to the development of Savin's liquid ink technology. Savin denies that it has sold any copiers using the Engelhard-contributed technological input (which it refers to as the "Engelhard Catalyst"), Savin also points out that it has now discontinued its plans to commercially manufacture the high speed copier that would have utilized the new liquid ink technology. However, that technology does remain extremely valuable, because Savin has now licensed certain of its liquid toner and related technology to Xerox Corporation, E.I. DuPont de Nemours & Co. and Harris Graphics. Thus far those licenses have produced revenues in excess of $20 million.

By way of further background, Savin further points out that after the Savin/Xerox license was announced, Engelhard expressed concern as to whether its catalyst technology had been improperly transferred to Xerox. Seeking to alleviate Engelhard's concern, Savin assured Engelhard, at a meeting among Savin and Engelhard representatives in July, 1985, that there had been no disclosure of Engelhard catalyst information. Unsatisfied by these assurances, Engelhard's Chief Patent Counsel wrote a letter to Savin's General Counsel in July, 1985, suggesting that the best way to resolve the matter would be for both Savin and Engelhard to approach Xerox and DuPont and to ask each licensee to reveal what Engelhard catalyst-related information had been given to it. In response to that suggestion, Savin retained special counsel, who met with Engelhard's counsel in September, 1985 and agreed to further investigate whether there had been any disclosure of the Engelhard catalyst information to Savin's licensees. Counsel's investigation was to be followed by a meeting among Savin, Engelhard and Xerox representatives, and (if Engelhard desired) by similar meetings among the parties and the other licensees.

Thereafter, Savin's special counsel periodically informed Engelhard's outside counsel of the status of the investigation. By mid-October, Savin's special counsel was able to advise Engelhard's counsel that the investigation would be completed shortly, and that its preliminary investigation had confirmed that the Engelhard Catalyst had never been transferred, nor had its formulation been disclosed, to any licensee. Engelhard does not dispute that this sequence of events took place as narrated.

A few days later, Engelhard filed this action. On November 5, 1985, Engelhard filed and served interrogatories, a document production request, and a notice of deposition of Savin. On December 2, 1985 Engelhard noticed the deposition of DuPont, one of Savin's licensees. Engelhard's discovery is the subject of Savin's motion for a protective order.

## II.

The instant discovery dispute, for which the foregoing background sets the stage, was triggered by certain of Engelhard's interrogatories and document requests that seek broad categories of information relating to Savin's confidential liquid toner and copier, including fuser and afterburner, technology. (*See, e.g.*, Engelhard Document Request Nos. 12, 13 and 14 and Interrogatory Nos. 6, 13, 22 and 34). Engelhard's deposition notices of Savin and DuPont evidence a similar intent to inquire into some or all of those areas as well.

Savin strenuously objects to Engelhard's discovery requests, on the ground that Engelhard has failed to identify what it claims to be the trade secrets that Savin allegedly improperly used, appropriated and/or disclosed. Savin contends that Engelhard has not and cannot demonstrate how discovery of Savin's liquid toner and copier technology is necessary for Engelhard to determine whether Savin improperly disclosed Engelhard's trade secrets. Savin argues that only after Engelhard identifies the specific trade secret information it claims to be in issue, can the relevance (if any), of its proposed discovery of Savin's liquid toner and copier technology be assessed and determined. Savin thus seeks a protective order that would: (i) require Engelhard to identify the alleged trade secrets that it claims were given to, and allegedly improperly used, appropriated, and/or disclosed by Savin, (ii) permit the parties a reasonable time during which Savin would assess the propriety of Engelhard's proposed discovery with respect to Engelhard's claim of trade secret misappropriation and unauthorized commercial use, during which period the parties would attempt to establish the proper limits of such discovery, and (iii) with respect to Engelhard's claim of improper trade secret disclosure, permit Engelhard to depose Savin's licensees to determine whether Savin disclosed to those licensees the trade secrets previously identified by Engelhard.

Savin argues that a protective order limiting discovery in the foregoing fashion is supported by the case law, is compelled by the equities of this particular case, and, moreover, is consistent with Engelhard's own *ante litem* position. Any other result, Savin contends, would signal an open season for Engelhard to roam through Savin's own confidential and technical trade secret information by virtue of having merely filed a complaint alleging improper use or disclosure of trade secrets.

In response, Engelhard states that it is willing to file a "trade secret statement" under an appropriate protective order,* before any discovery proceeds against Savin, setting forth the technology disclosed by it to Savin. However, Engelhard takes the position that the trade secret statement must be filed under seal and must not be disclosed to Savin for 90 days, during which time Engelhard would proceed with its discovery of Savin. Engelhard asserts that this approach is reasonable, because it is willing, at least for the time being, to restrict the scope of its discovery to the period from and after January 1, 1982 and to "the catalysts, to the fuser and afterburner sections." (Transcript of 12/10/85 Hearing, p. 36).

## III.

Chancery Court Rule 26(c) authorizes this Court to order "that discovery may be had only on specified terms and conditions," that "the discovery may be had only by a method of discovery other than that selected by the party seeking discovery," that "the scope of discovery be limited to certain matters," and that "a trade secret or other confidential . . . information . . . be disclosed only in a designated way." Having considered the briefs and other submissions of the parties, I am persuaded that a protective order should be entered granting the relief sought by Savin.

■ Where a party litigant seeks discovery that its adversary contends is not

---

* The parties have recently agreed to, and the Court has approved, such a protective order.

relevant, the party seeking discovery may, given a proper and timely objection, be required to establish that the proposed discovery is reasonably calculated to lead to the discovery of admissible evidence. That basic discovery principle is applicable to trade secret cases as with any other case, but with one additional twist. Where, as here, a plaintiff in a trade secret case seeks to discover the trade secrets and confidential proprietary information of its adversary, the plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets. *Data General Corp. v. SCI Systems, Inc.,* Del.Ch., C.A. No. 5662, Brown, V.C. (November 27, 1978); *Xerox Corporation v. International Business Machines Corporation,* 64 F.R.D. 367, 371–72 (S.D.N.Y. 1974); *Struthers Scientific & Int. Corp. v. General Foods Corp.,* 51 F.R.D. 149, 154 (D.Del.1970). Engelhard does not contest that legal proposition, and, as noted, it has agreed to file a trade secret statement.

■ However, Engelhard argues that Savin should not be permitted access to the contents of that trade secret statement for 90 days, during which time Engelhard would take its discovery, albeit in a somewhat pared down form. Engelhard's position, if accepted, would defeat the very purpose of the trade secret disclosure requirement, which is to enable the parties, and, if necessary, the Court, to determine the outside parameters of discovery. Stated differently, the purpose of the requirement is to clarify the issues involved in the dispute so as to assure that there will be no disclosure of an adversary litigant's trade secrets beyond what is necessary for the prosecution of the litigation. *Data General, supra,* slip op. at p. 5; *Struthers, supra,* 51 F.R.D. at 154. Engelhard's proposal would enable it to complete its discovery before the ground rules of relevancy could even be established. Such a result would be inequitable and arbitrary, and Engel-

hard's unilateral decision to reduce the scope of its discovery would not necessarily eliminate the inequity. Engelhard has offered no legal or factual support to justify its position.

Because Savin's approach is consistent with the case law and also with Engelhard's own pre-litigation position, and is fair to both sides, Savin's motion for a protective order will be granted. To implement the rulings contained in this Opinion, I have entered the attached protective order.

### ORDER

Defendant Savin Corporation ("Savin"), having moved for a protective order relating to certain discovery propounded by plaintiff Engelhard Corporation ("Engelhard"), and the Court having heard the parties and, for the reasons set forth in its Opinion of even date, having concluded that Savin's motion should be granted:

WHEREFORE, IT IS HEREBY ORDERED this 2nd day of January, 1986, as follows:

1. Engelhard's pending discovery requests shall be held in abeyance until the completion of the events set forth in Paragraphs 2, 3, and 4(a) below.

2. Engelhard shall serve and file (pursuant to the terms of the Protective Order previously agreed to between the parties and entered by the Court) a response to Savin's pending interrogatories and document production request. Engelhard's response shall contain its "trade secret statement." Unless the parties otherwise agree in writing, such response shall be served and filed on or before February 4, 1986.

3. Except as the parties may otherwise agree in writing, Savin shall have thirty (30) days from the service and filing of Engelhard's response, in which to file an amended response to Engelhard's pending discovery requests, which amended response shall contain Savin's objections, if any, to Engelhard's pending discovery requests.

4. After Savin files its amended response: (a) the parties shall confer in a good faith effort to resolve any disputes concerning the scope of the discovery being sought by Engelhard and any other objections of Savin, and (b) subject to the limitations upon the scope of discovery and to any other limitations agreed upon by the parties (or, in the absence of agreement, as ordered by the Court), Engelhard shall thereafter be entitled to proceed with its depositions of Savin and of such licensees of Savin as it wishes to depose, to determine whether Engelhard's trade secrets (as previously identified by Engelhard) were improperly disclosed by Savin to its licensee(s).