**COMPUTER ECONOMICS, INC., Plaintiff,**

**v.**

**GARTNER GROUP, INC., Defendant.**

**No. 98–CV–0312 TW.**

United States District Court, S.D. California.

May 25, 1999.

James R. Lance & Monique Ballard Candor Post, Kirby, Noonan & Sweat, San Diego, CA, for plaintiff Computer Economics.

David L. Larson, Usha Narayanan & R. Craig Gordon, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for defendant Gartner Group.

## AMENDED MEMORANDUM OPINION AND ORDER

WHELAN, District Judge.

Before the court are defendant Gartner Group, Inc.'s objections to the magistrate judge's September 28, 1998 order sanctioning Gartner for failing to produce discovery. For the reasons expressed herein, the court sustains Gartner's objections.

### I. BACKGROUND

Plaintiff Computer Economics, Inc. ("CEI") is a newsletter publisher specializing in the information technology industry. CEI publishes eight analytical and investigative newsletters in the fields of corporate computing, Internet marketing and electronic commerce. Defendant Gartner Group, Inc. ("Gartner") is an international publisher of various publications including books, reports, CD–ROM discs, surveys, and analyses relating to the computer and information industry.

In November 1995 a representative from Gartner contacted CEI and arranged a tour of CEI's headquarters in Carlsbad, California. According to CEI, Gartner stated that it was seeking to expand its newsletter publishing business and was investigating possible opportunities for acquisition, including CEI. On or about January 1996, CEI allegedly sent Gartner a document containing confidential information concerning CEI's sales volumes, subscription renewal rates, and marketing techniques."

On February 16, 1996 Gartner toured CEI's headquarters a second time and was allegedly provided with additional trade secrets. At the conclusion of the tour, Gartner informed CEI that Gartner did not wish to acquire CEI's operations. During the next 18 months Gartner launched nine newsletters in direct competition with CEI, each containing content similar to CEI's newsletters.

On January 13, 1998 CEI commenced this action against Gartner in San Diego Superior Court. The complaint asserts state law claims sounding in trade secret misappropriation, breach of contract, and fraud. In essence, CEI alleges that Gartner used the confidential information obtained during the February 1996 tour of CEI's facilities to expand its newsletter publication business. In February 1998, Gartner removed this action to federal court based on diversity of citizenship.

On March 31, 1998 CEI served Gartner with its first set of document requests and interrogatories. Gartner served timely written objections and responded that it believed CEI was required to provide a reasonably detailed list of its allegedly

misappropriated trade secrets before Gartner was obligated to produce discovery.

Gartner's refusal to produce discovery was based on a unique statutory provision of California's Uniform Trade Secrets Act: Section 2019(d) of the California Code of Civil Procedure. That statute prevents a plaintiff from conducting discovery in a trade secret misappropriation case until it identifies its allegedly misappropriated trade secrets "with reasonable particularity." Cal.Civ.Proc.Code § 2019(d) (West 1997) (hereinafter "CCP § 2019(d)"). Gartner stated that it would produce the requested discovery within five days of receipt of CEI's trade secret identification.

CEI responded that CCP § 2019(d) was a procedural rule applicable only in California state courts. Between April and July 1998 the parties exchanged further correspondence in an attempt to resolve the dispute. CEI declined to identify its allegedly misappropriated trade secrets.

In July 1998 CEI and Gartner filed cross-motions on the subject. CEI filed a motion to compel Gartner to respond to CEI's interrogatories while Gartner filed a motion to compel CEI to identify its allegedly misappropriated trade secrets. Both motions were based on the central question of whether CCP § 2019(d) applied in federal court. Although Gartner acknowledged that there was no authority directly addressing the issue, its motion referred to several cases where federal courts applied CCP § 2019(d) without analysis, presumably because the issue was not in dispute.[1]

CEI disagreed and argued that CCP § 2019(d) was a rule of procedure applicable only in state courts.

By order dated August 12, 1998, the magistrate judge granted CEI's motion to compel discovery and denied Gartner's motion to compel trade secret identification under CCP § 2019(d). The magistrate judge rejected Gartner's arguments that CCP § 2019(d) was enforceable in federal court, concluded that Gartner was not substantially justified in invoking . CCP § 2019(d) to resist discovery, and indicated that sanctions would be imposed. On September 28, 1998 after additional briefing on the amount of sanctions, the magistrate judge ordered Gartner to pay $6,856.45 to reimburse CEI for the costs of bringing its motion to compel. The order concluded that sanctions were appropriate because the cases cited by Gartner "d[id] not support [its] argument that section 2019(d) is a substantive obligation enforced by federal courts in trade secret litigation." The order concluded that "it is clear that Plaintiff was not obligated to identify its trade secrets before commencing discovery in this action."

Gartner objects to the September 28 order on three grounds. First, Gartner argues that CCP § 2019(d) is rule of substance that should be enforced in federal court. Second, Gartner contends that even if CCP § 2019(d) is not applicable, its reliance on that statute was reasonable and justified such that sanctions were inappropriate. Third, Gartner asserts that

---

1. Specifically, Gartner cited *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 88 F.3d 142, 147 (2d Cir.1996) (assessing plaintiff's compliance with CCP § 2019(d) in trade secret case where parties had agreed that California law applied) and *California Micro Devices Corp. v. Universal Semiconductor, Inc.*, No. C93–20476 JW (PVT), 1995 WL 705144, at *1 (N.D.Cal. Nov.21, 1995) (ordering defendant to answer deposition questions since plaintiff had provided defendant with the information required by CCP § 2019(d)). Gartner also provided an affidavit from its attorney stating that federal courts in the Northern District of California routinely apply CCP § 2019(d) in trade secret litigation. To illustrate, Gartner

lodged a protective order written by Magistrate Judge Patricia Trumbull. *See* Order Granting in Part and Denying in Part Defendant's Motion for More Specific Identification of Trade Secrets, *Systems America, Inc. v. Softline Inc.*, No. C96–20730 RMW (PVT) (N.D.Cal. Oct. 30, 1996). In that order, Judge Trumbull ordered plaintiff to comply with CCP § 2019(d) before discovery could be taken.

Here, the magistrate judge correctly observed that none of those cases involved a discovery dispute. There is no indication that the plaintiffs in those cases disputed the applicability of CCP § 2019(d).

$6,856.45 represents an excessive and disproportionate sanction award.

This court requested additional briefing on whether the doctrine announced in *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) required application of CCP § 2019(d) in federal court. For the reasons expressed herein, the court sustains Gartner's objections and holds that CCP § 2019(d) is applicable in this case.

## II. STANDARD OF REVIEW

■ A party may object to a non-dispositive pretrial order of a U.S. Magistrate Judge within ten days after service of the order. Fed.R.Civ.P. 72(a). The magistrate judge's order will be upheld unless it is "clearly erroneous or contrary to law." *Id.;* 28 U.S.C. § 636(b)(1)(A). The "clearly erroneous" standard applies to the magistrate judge's factual determinations and discretionary decisions, including orders imposing discovery sanctions. *Maisonville v. F2 Am., Inc.,* 902 F.2d 746, 748 (9th Cir.1990) (holding that factual determinations made in connection with sanction award are reviewable for clear error); *Grimes v. City and County of San Francisco,* 951 F.2d 236, 240 (9th Cir.1991) (holding that discovery sanctions are nondispositive pretrial matters reviewable for clear error under Rule 72(a)). Under this standard, "the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.,* 126 F.3d 926, 943 (7th Cir.1997).

■ On the other hand, the "contrary to law" standard permits independent review of purely legal determinations by a magistrate judge. *See, e.g., Haines v. Liggett Group, Inc.,* 975 F.2d 81, 91 (3d Cir.1992) ("the phrase 'contrary to law' indicates plenary review as to matters of law."); *Medical Imaging Centers of America, Inc. v. Lichtenstein,* 917 F.Supp. 717, 719 (S.D.Cal.1996) (Brewster, J.) ("Section 636(b)(1) ... has been interpreted to provide for de novo review by the district court on issues of law."); 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3069 at 350 & 355 (2d ed.1997). Thus, the district court should exercise its independent judgment with respect to a magistrate judge's legal conclusions. *Gandee v. Glaser,* 785 F.Supp. 684, 686 (S.D.Ohio 1992), *aff'd* 19 F.3d 1432 (6th Cir.1994).[2]

Careful review of the transcript of the hearings before the magistrate judge, the briefs filed by the parties, and the magistrate judge's order reveals that the sanctions order was based solely on a determination that CCP § 2019(d) is a rule of procedure inapplicable in federal court. Since the magistrate judge's order was based entirely on a conclusion of law, *Harvey's Wagon Wheel, Inc. v. Van Blitter,* 959 F.2d 153, 154 (9th Cir.1992), it will be reviewed independently.

## III. CALIFORNIA'S UNIFORM TRADE SECRETS ACT AND SECTION 2019 (D) OF THE CALIFORNIA CODE OF CIVIL PROCEDURE

In 1984, California became one of many states to adopt the Uniform Trade Secrets Act ("UTSA"). Cal.Civ.Code §§ 3426 et seq (West 1997). As part of the UTSA,

---

**2.** It is not entirely clear whether the "contrary to law" standard contemplates de novo review of a magistrate judge's legal determinations. *Compare Merritt v. International Broth., of Boilermakers,* 649 F.2d 1013, 1016–17 (5th Cir.1981) (distinguishing the "clearly erroneous and contrary to law" standard of review for non-dispositive orders under 28 U.S.C. § 636(b)(1)(A) from the "de novo" standard applied to proposed findings and recommendations under 28 U.S.C. § 636(b)(1)(B)) *with Adolph Coors Co. v. Wal-* *lace,* 570 F.Supp. 202, 205 (N.D.Cal.1983) (holding that the "contrary to law" language of 28 U.S.C. § 636(b)(1) permits de novo review of magistrate judge's legal conclusions). The court need not resolve whether the "contrary to law" language permits de novo review of purely legal questions. At a minimum, it is less deferential than the "clearly erroneous" standard applicable to the magistrate judge's factual determinations and acts of discretion.

the California legislature enacted a unique provision which prevents a trade secret plaintiff from taking discovery until it specifically identifies the trade secrets it claims the defendant misappropriated.[3] That section reads:

> In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act (Title 5 (commencing with Section 3426) of Part 1 of Division 4 of the Civil Code), before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code.

Cal.Civ.Proc.Code § 2019(d) (West 1997).[4] Section 3426.5 of the Civil Code,[5] referenced in the last clause of CCP § 2019(d), allows the court to issue a protective order to ensure the confidentiality of plaintiff's trade secret identification.

The rationale behind this rule was first articulated in *Diodes, Inc. v. Franzen,* 260 Cal.App.2d 244, 67 Cal.Rptr. 19 (1968). In *Diodes, Inc.,* the trial court dismissed plaintiff's third amended complaint without leave to amend because it failed "to plead facts showing that [plaintiff] ever had any trade secret to protect." 260 Cal.App.2d at 251, 67 Cal.Rptr. 19. Affirming the dismissal, the appellate court recognized that a trade secret plaintiff need not disclose the details of its trade secret in its complaint, because such a requirement "would mean that the [plaintiff] would have to destroy the very thing for which he sought protection by making public the

secret itself." *Id.* at 252, 67 Cal.Rptr. 19. However, in dicta the court stated that a trade secret plaintiff should not be able to obtain discovery unless it discloses its alleged trade secrets.

> Before a defendant is compelled to respond to a complaint based upon claimed misappropriation or misuse of a trade secret and to embark on discovery which may be both prolonged and expensive, the [plaintiff] should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.

*Id.* at 252, 67 Cal.Rptr. 19. Such a disclosure must provide "reasonable notice of the issues which must be met at the time of trial" and "reasonable guidance in ascertaining the scope of appropriate discovery." *Id.*

Although the legislative history of CCP § 2019(d) is not well-documented, the parties do not dispute that it was intended to codify *Diodes, Inc. See* James H. Pooley, *Better Protection for Trade Secrets: A New Act Clarifies Case Law and Changes Litigation Rules,* Cal.Law., August 1985, at 51, 68 (noting that CCP § 2019(d) was not part of the model Uniform Trade Secrets Act "but was included in the California legislation at the State Bar's suggestion."); Comments from the Patent, Trademark, and Copyright Section of the California State Bar to Assemblyman Har-

---

**3.** Although over 42 states have adopted some variant of the Uniform Trade Secrets Act, California appears to be the only state with a statutory rule that postpones discovery pending a plaintiff's identification of its trade secrets. Delaware courts follow a similar common law rule requiring a plaintiff to furnish a trade secret disclosure statement at the outset of discovery. *See Engelhard Corp. v. Savin Corp.,* 505 A.2d 30, 32–33 (Del.Ch.1986); *Magnox v. Turner,* No. Civ.A. 11951, 1991 WL 182450, at *1 (Del.Ch. Sep.10, 1991).

**4.** The rule was originally codified at Section 2036.2 of the California Code of Civil Proce-

dure but was relocated to Section 2019(d) after a 1987 amendment.

**5.** Section 3426.5 reads:

In an action under [the Uniform Trade Secret Act], a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings, holding in camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval. Cal.Civ.Code § 3426.5 (West 1997).

ris, at 5 (March 28, 1983) (lodged as Larson Decl.Exh. 13) (noting that the addition of CCP § 2019(d) was "intended to codify *Diodes, Inc.* and afford a measure of protection against the procedure of initiating an action to pursue extensive discovery without revelation of the trade secret or secrets.").[6]

The rule requiring a plaintiff to disclose its trade secrets at the outset of discovery serves four purposes. First, it promotes well-investigated claims and dissuades the filing of meritless trade secret complaints. Second, it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets. *Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 32–33 (Del.Ch.1986); *Struthers Scientific & Intern. Corp. v. General Foods Corp.*, 51 F.R.D. 149, 151–52 (D.Del.1970) (requiring trade secret plaintiff to make reasonably particularized disclosure of its allegedly misappropriated trade secrets before it could obtain discovery of defendant's confidential information); Well & Brown, *Cal. Practice Guide: Civil Procedure Before Trial* (The Rutter Group 1998) § 8:60 (noting that "[t]he purpose [of CCP § 2019(d) ] is to prevent plaintiff from conducting 'fishing expeditions' into competitors' business files by unfounded claims of trade secret misappropriation."). Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope. *Diodes, Inc.*, 260 Cal. App.2d at 252, 67 Cal.Rptr. 19; *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F.Supp. 635, 637 (D.Del.1991) (recognizing that disclosure and identification of plaintiff's trade secrets is often necessary to ascertain the relevance of plaintiff's discovery); *Magnox v. Turner*, No. Civ.A. 11951, 1991 WL 182450, at *1 (Del.Ch. Sep.10, 1991) (denying plaintiff's motion to compel discovery because "the relevance of [its] requests cannot be determined until [plaintiff] identifies the trade secrets that it claims have been misappropriated by defendant."). Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation. R. Milgrim, 4 *Trade Secrets* § 16.01[5][b] (1997) (arguing that a defendant cannot formulate an effective defense to allegations of trade secret misappropriation unless it is provided "with clear detail of what the plaintiff claims to be its trade secret.").

## IV. APPLICABILITY OF CCP § 2019(D) IN FEDERAL COURT

CEI does not dispute that if Gartner had not removed this action to federal

---

**6.** Gartner also furnished a document it obtained from a legislative history service which sheds light on the purposes behind CCP § 2019(d). *See* Memorandum from Messrs. John Carson and Greg Wood to Assemblyman Harris re: Assembly Bill 501 (Doc # 77, Exh. B). The memorandum was circulated to members of the California legislature before the adoption of the Uniform Trade Secrets Act. It proposes a number of changes to Assembly Bill 501 (California's Uniform Trade Secrets Act), including a provision requiring a plaintiff to identify its trade secrets at the outset of discovery. The memorandum argues that early disclosure of trade secrets protects defendants from baseless claims:

> One area not addressed by the Uniform Act is the area of plaintiff's abuse in initiating trade secret lawsuits for the purpose of harassing or even driving a competitor out of business by forcing a competitor to spend large sums in defending unwarranted litiga-

tion. For example, where a plaintiff's employee quits and opens a competing business, a plaintiff often files a lawsuit for trade secret misappropriation which states that the defendant took and is using plaintiff's trade secrets, but does not identify the trade secrets. The plaintiff can then embark upon extensive discovery which the new business is ill equipped to afford. Furthermore, by not informing the defendant with any degree of specificity as to what the alleged trade secrets are, defendant may be forced to disclose its own business or trade secrets, even though those matters may be irrelevant, and the defendant may not learn the exact nature of the supposedly misappropriated trade secrets until the eve of trial.

The memorandum proposes statutory language which was ultimately adopted as CCP § 2036.2, the predecessor to CCP § 2019(d). *See supra* footnote 4.

court, CCP § 2019(d) would have required CEI to disclose its allegedly misappropriated trade secrets at the outset of discovery. Determining whether CCP § 2019(d) applies in diversity actions requires the court to analyze the statute under the doctrines announced in *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

### a. OVERVIEW OF THE ERIE DOCTRINE

■ A federal court sitting in diversity must apply state substantive law and federal procedural law. *Erie R.R.,* 304 U.S. at 78, 58 S.Ct. at 822.[7] Courts have struggled for years to describe the standard used to determine whether a particular state law is "substantive" or "procedural." *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996) ("classification of a law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor"); *Lundgren v. McDaniel,* 814 F.2d 600, 605–06 (11th Cir.1987) (observing that "[t]he distinction between substance and procedure has proved highly elusive"). In fact, placing a state rule within the substance-procedure continuum is generally unhelpful in determining whether Erie commands its application in federal court. *See, e.g., Hanna,* 380 U.S. at 471, 85 S.Ct. at 1144 (quoting *Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945)) ("The line between 'substance' and 'procedure' shifts as the legal context changes. 'Each implies different variables depending upon the particular problem for which it is used.' "); *Edelson v. Soricelli,* 610 F.2d 131, 133 (3d Cir.1979) (stating that classification of state rule as substantive or

procedural "provides no effective guidance" in applying the *Erie* doctrine).

Rather, applying the doctrine of *Erie* requires a two-step analysis. First, the court must determine whether the state rule conflicts with an applicable Federal Rule of Civil Procedure. If so, principles of federal supremacy require the court to apply the Federal Rule rather than state law. *Hanna,* 380 U.S. at 471, 85 S.Ct. at 1143–44. Otherwise, the court must analyze whether failure to apply the state law would either significantly affect the outcome of the litigation or encourage litigants to file their actions in federal court. *Id.* at 468, 85 S.Ct. at 1142. Both lines of analysis are discussed in more detail below.

### b. POTENTIAL CONFLICT WITH THE FEDERAL RULES OF CIVIL PROCEDURE [RULES ENABLING ACT ANALYSIS]

The most critical question the court must address is whether one or more of the Federal Rules of Civil Procedure controls the issue before the court. *Hanna,* 380 U.S. at 471, 85 S.Ct. at 1143–44. "The initial step is to determine whether, when fairly construed, the scope of [a Federal Rule] is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of state law." *Burlington Northern R.R. Co. v. Woods,* 480 U.S. 1, 5, 107 S.Ct. 967, 969, 94 L.Ed.2d 1 (1987) (quoting *Walker v. Armco Steel Corp.,* 446 U.S. 740, 749–50 & n. 9, 100 S.Ct. 1978, 1984–85 & n. 9, 64 L.Ed.2d 659 (1980)). The Supreme Court has noted that the requirement of a "direct collision" does not "mandate that federal law and state law be perfectly coextensive and equally applicable to the issue at hand." *Stewart Org., Inc. v. Ricoh Corp.,*

---

7. Although the *Erie* doctrine was developed in the context of diversity litigation, it applies in any case where state law provides a rule of decision, regardless of its jurisdictional basis. *See Mangold v. California Pub. Util. Comm'n.,* 67 F.3d 1470, 1478 (9th Cir.1995) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715,

726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (dicta)) ("The *Erie* principles apply equally in the context of pendent jurisdiction."); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan,* 883 F.2d 345, 353 (5th Cir.1989) (same).

487 U.S. 22, 26 n. 4, 108 S.Ct. 2239, 2242 n. 4, 101 L.Ed.2d 22 (1988). "[R]ather, the 'direct collision' language, at least where the applicability of a federal statute is at issue, expresses the requirement that the federal statute be sufficiently broad to cover the point in dispute." *Id.* The Ninth Circuit has extended this reasoning to the Federal Rules of Civil Procedure. *Harvey's Wagon Wheel, Inc. v. Van Blitter,* 959 F.2d 153, 156 (9th Cir.1992).

■ However, a Federal Rule does not conflict with a state law merely because both rules impose similar or overlapping requirements. Rather, a Federal Rule is "sufficiently broad" to control the question before the court when compliance with both rules is not possible, when the Federal Rule "occupies the field" with respect to its subject matter, or when application of the state law would frustrate the purposes behind the Federal Rule. *See Burlington,* 480 U.S. at 7, 107 S.Ct. at 970; *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.,* 171 F.3d 1208, 1217 (9th Cir. 1999); *S.A. Healy Co. v. Milwaukee Metro., Sewerage Dist.,* 60 F.3d 305, 311–12 (7th Cir.1995) (holding that state rule allowing plaintiffs to recover costs if defendants refused settlement demand made 20 days before trial did not conflict with Federal Rule 68 allowing defendants to make settlement offer 10 days before trial because the rules could be applied simultaneously, benefitted different parties, and furthered different objectives); 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4510 (2d ed. 1996 & Supp.1999) (observing that inquiry into whether state law and Federal Rule conflict "usually can be characterized as whether the federal rule and the state rule can be applied contemporaneously."); 17 James Wm. Moore et al., *Moore's Federal Practice* ¶ 124.03[1] (3d ed. 1998) ("Typically, courts deem a federal rule sufficiently broad to control the issue when the court cannot give effect to both the federal and state rules.").

■ When determining the scope of the Federal Rules, the Rules must be given their plain meaning, consistent with their purpose, affording some sensitivity to the policies the state law serves to advance. *Gasperini,* 518 U.S. at 427 n. 7, 116 S.Ct. at 2219 n. 7 ("[f]ederal courts have interpreted the Federal Rules ... with sensitivity to important state interests and regulatory policies"); *Stewart Org.,* 487 U.S. at 37–38, 108 S.Ct. at 2247–48 (Scalia, J., dissenting) ("in deciding whether a federal statute or [r]ule ... encompasses a particular issue, a broad reading that would create significant disuniformity between state and federal courts should be avoided if the text permits"); *Walker,* 446 U.S. at 750 n. 9, 100 S.Ct. at 1985 n. 9 ("This is·not to suggest that the Federal Rules ... are to be narrowly construed in order to avoid a 'direct collision' with state law. The ... Rules should be given their plain meaning.").

■ If a Federal Rule controls the issue before the court, the Rule will be applied so long as it is constitutional and consistent with the Rules Enabling Act's caveat that the rule "not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2072(b); *Hanna,* 380 U.S. at 471, 85 S.Ct. at 1144; *Sibbach v. Wilson & Co.,* 312 U.S. 1, 14, 655, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1941) (validity of Federal Rule under Rules Enabling Act turns on whether Rule "really regulates procedure,—the judicial process for enforcing rights and · duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them."). However, the Federal Rules enjoy a strong presumption of constitutional and statutory validity. *Burlington Northern R. Co.,* 480 U.S. 1, 5–6, 107 S.Ct. 967, 970, 94 L.Ed.2d 1 (1987); 19 Charles Alan Wright et al., *supra,* § 4509 (2d ed. 1996) ("In the vast majority of cases, diversity cases included, questions concerning the validity of the Civil Rules safely can be assumed to have been resolved favorably."). To the extent a Federal Rule

controls the issue before the court, the Rule will be applied and state law will be displaced.

▉ CEI argues that CCP § 2019(d) conflicts with various provisions of Federal Rule of Civil Procedure, including Rules 26(c)(7) and 26(b)(1).

### 1. *RULE 26 (c)(7)*

Federal Rule of Civil Procedure 26(c)(7) authorizes the court to issue a protective order controlling the discovery of trade secret information. That rule reads in pertinent part:

> **Protective Orders.** Upon motion by a party or by the person from whom discovery is sought ..., the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way..

FED.R.CIV.P. 26(c)(7). Plaintiff argues that Rule 26(c)(7) affords trade secret defendants protections identical to CCP § 2019(d) and that Rule 26(c)(7) provides the exclusive procedural mechanism for a defendant to resist discovery of its trade secrets.

This argument is unpersuasive for three reasons. First, Rule 26(c)(7) neither negates nor even confronts the state statute's requirement that a plaintiff automatically disclose its alleged trade secrets upon the commencement of discovery. Rule 26(c) permits a defendant to file a motion for a protective order to prevent the disclosure of *defendant's* trade secrets, while CCP § 2019(d) requires the *plaintiff* to identify its allegedly misappropriated trade secrets before seeking discovery. Hence, there is no inconsistency, let alone a collision, between the provisions.

Second, the protections of Rule 26(c)(7) are not coextensive with those provided by CCP § 2019(d). Under CCP § 2019(d), a stay of discovery pending plaintiff's identification of its alleged trade secrets is automatically imposed, covering all discovery related to plaintiff's trade secret claims. Under Rule 26(c)(7), however, a party cannot obtain a protective order without showing "good cause" and demonstrating that the information sought is confidential, falling into one of the categories enumerated in the Rule. *See In re Remington Arms Co., Inc.*, 952 F.2d 1029, 1032 (8th Cir. 1991). These distinctions underscore the fundamentally different purposes served by these two rules. CCP § 2019(d) was enacted primarily to curb and deter plaintiffs from asserting unsupported trade secret claims while Rule 26(c)(7) serves to prevent or control disclosure of a party's trade secrets in discovery.

Third, Federal Rule 26(c)(7) and CCP § 2019(d) complement one another. It is well recognized that inadvertent disclosure of a trade secret to third parties during litigation can destroy the trade secret plaintiff is attempting to protect. *See Diodes, Inc.*, 260 Cal.App.2d at 252, 67 Cal.Rptr. 19; R. Milgrim, 4 *Trade Secrets* § 14.02[1] (1997) (discussing the risk of disclosure inherent in trade secret litigation).[8] To alleviate these concerns, the last clause of CCP § 2019(d) provides that a plaintiff's obligation to identify its trade secrets is "subject to any orders that may be appropriate under Section 3426.5 of the Civil Code." Cal.Civ.Proc.Code § 2019(d) (West 1997). That section parallels Rule 26(c)(7) by authorizing the court to "preserve the secrecy of an alleged trade secret by reasonable means," including "granting protective orders in connection with discovery proceedings." Cal.Civ. Code § 3426.5 (West 1997).[9] Thus, issuance of a protective order is essential to ensuring that a plaintiff who complies with CCP § 2019(d) can prevent inadvertent disclosure of its trade secrets. In federal

---

8. *See supra* Part III.

9. *See supra* footnote 5.

court, a plaintiff may alleviate its legitimate concerns that its trade secrets will be disclosed to third parties by applying for a protective order under Rule 26(c)(7) before it complies with CCP § 2019(d).

The slight similarity of subject matter and purpose between Rule 26(c) and CCP § 2019(d) does not render the two rules in conflict. Since litigants would likely use them together, Rule 26(c) and CCP § 2019(d) "can exist side by side ... each controlling [their] own intended sphere of coverage without conflict." *Walker*, 446 U.S. at 752, 100 S.Ct. at 1986.

### 2. RULE 26 (B)(1)

Although not entirely clear from its papers, CEI appears to argue that CCP § 2019(d) conflicts with the broad right of discovery conferred by Rule 26(b)(1). That Rule entitles a party to discover material "relevant to the subject matter involved in the pending action" or "reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b)(1).

The court finds no conflict between Rule 26(b)(1) and CCP § 2019(d). The state statute does not alter the scope of discoverable evidence under Rule 26(b)(1); it merely postpones discovery until a plaintiff identifies its allegedly misappropriated trade secrets. In fact, requiring a plaintiff to identify its trade secrets before discovery *assists* the court in ascertaining whether plaintiff's requests for discovery fall within the scope of permissible discovery under Rule 26(b)(1). Only until a plaintiff identifies its allegedly misappropriated trade secrets can the court determine the relevance, and therefore the scope, of discovery. *See, e.g., Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F.Supp. 635, 637 (D.Del.1991) (ordering stay of discovery pending trade secret disclosure because "disclosure of plaintiff's trade secrets prior to discovery of defendant may be necessary to enable the defendant and ultimately the Court to ascertain the relevance of plaintiff's discov-

ery."); *Xerox Corp. v. International Bus. Machines Corp.*, 64 F.R.D. 367, 371–72 (S.D.N.Y.1974) (ordering trade secret plaintiff to identify trade secrets allegedly misappropriated after 15 months of discovery because "until this is done, neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not; and it is doubtful whether [plaintiff] can undertake a meaningful discovery program"); *Canter v. West Pub. Co., Inc.*, No. C96–20440 PVT, 1999 WL 11701 at *8 (N.D.Cal. Jan.06, 1999) (plaintiffs' failure to adequately identify its trade secrets "has left both [defendant] and this court guessing as to what exactly Plaintiffs claim is their trade secret."); *Diversified Tech. Inc. v. Dubin*, 156 F.R.D. 132, 31 U.S.P.Q.2d 1692, 1695 (S.D.Miss.1994) (opinion withdrawn) ("It is painfully obvious ... that identification of the trade secrets at issue is the most fundamental and basic aspect of this case. Indeed, after entry of an appropriate protective order, exact and specific identification of trade secrets should have been the starting point of discovery in this cause, not a matter for disclosure at the eleventh hour."), *quoted in* Kevin R. Casey, *Identification of Trade Secrets During Discovery: Timing and Specificity*, 24 Am.Intell.Prop.L. Ass'n 191, 214 (1996); *see also* R. Milgrim, 4 *Trade Secrets* § 16.01[5] (1997) ("soon after [a trade secret case] begins a plaintiff can reasonably anticipate that the defendant will insist that it be apprised of considerable detail describing the trade secret. That insistence can reasonably be expected to *precede* the defendant's submitting to discovery of it.") (emphasis in original); James R. McKown, *Discovery of Trade Secrets*, 10 Santa Clara Computer & High Tech.L.J. 35, 47–67 (1994) (collecting cases).

### 3. OTHER PROVISIONS OF RULE 26

The court concludes that CCP § 2019(d) neither conflicts with nor frustrates the purpose of any other provision of Rule 26.[10] The state statute does not burden

---

10. The parties did not address whether CCP

§ 2019(d) conflicts with the automatic disclo-

the court with specific timing requirements or intricate procedures, and it does not require plaintiff's trade secret disclosure to take any specific form.[11] Aside from an automatic stay, a defendant may incorporate CCP § 2019(d) in a motion to compel plaintiff to identify its trade secrets. The rule's inherent flexibility invites implementation into any discovery order.

The court finds no conflict between CCP § 2019(d) and Rule 26(d), which abolishes fixed discovery priorities and empowers the court to control the sequence and timing of discovery. FED.R.CIV.P. 26(d). First, neither CCP § 2019(d) nor Rule 26(d) imposes fixed timing requirements or schedules. Once complied with, CCP § 2019(d) disappears for the remainder of the litigation and has no subsequent affect on the sequence and timing of discovery. Second, CCP § 2019(d) has no effect on the court's ability to issue orders regulating discovery or establishing discovery priorities. In fact, Rule 26(d) provides an additional tool for achieving the effect and carrying out the purposes of CCP § 2019(d). *See* Casey, *supra*, at 242–43 (observing that Rule 26(d) authorizes district court to issue order postponing discovery until a plaintiff identifies its allegedly misappropriated trade secrets); *cf. Marrese v. American Academy of Orthopaedic Surgeons*, 706 F.2d 1488, 1495 (7th Cir.1983), *rev'd on other grounds* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (recognizing that "[t]he power granted by Rule 26(d) to control the sequence and timing of discovery is one of the district courts' too little used tools for preventing the predatory abuse of discovery.").

### A. *Traditional Erie Analysis [Rules of Decision Act]*

■ Once a court determines that the state law does not conflict with a Federal Rule of Civil Procedure, it must determine whether the principles underlying the *Erie* doctrine require enforcement of the state rule in federal court. First, federal courts sitting in diversity must enforce state rules that are clearly substantive, "intended to be bound up with the definition of the rights and obligations of the parties." *Byrd v. Blue Ridge Rural Electrical Co-op., Inc.*, 356 U.S. 525, 536, 78 S.Ct. 893, 900, 2 L.Ed.2d 953 (1958). State rules that define the elements of a cause of action, affirmative defenses, presumptions, burdens of proof, and rules that create or preclude liability are so obviously substantive that their application in diversity actions is required. *See Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109–11, 65 S.Ct. 1464, 1470–71, 89 L.Ed. 2079 (1945) (federal court must apply state law specifying length of applicable statute of limitations); *Ragan v. Merchants Transfer & Warehouse Co., Inc.*, 337 U.S. 530, 532, 69 S.Ct. 1233, 1234, 93 L.Ed. 1520 (1949) (federal court must apply state law on tolling of statute of limitations); *Dick v. New York Life Ins. Co.*, 359 U.S. 437, 446–47, 79 S.Ct. 921, 927, 3 L.Ed.2d 935 (1959) (federal court must apply state law presumptions and burdens of proof); *Coplay Cement Co., Inc. v. Willis & Paul Group*, 983 F.2d 1435, 1438 (7th Cir.1993) (federal court must apply state rules concerning contract interpretation, including the parole evidence rule and the Statute of Frauds); *Woods v. Interstate Realty Co.*,

---

sures required by Federal Rules 26(a)(1)–(4), presumably because the Southern District of California has opted out of those provisions. *See* S.D.Cal. CivLR 26.1(f). Rules 26(a)(1)(A)–(B) appear to be the only sections which could potentially conflict with CCP § 2019(d). Those rules require the parties to automatically disclose, at the outset of discovery, witnesses and documents "relevant to disputed facts alleged with particularity in the pleadings." Fed.R.Civ.P. 26(a)(1)(A)–(B). Because plaintiffs do not allege their trade secrets "with particularity in the pleadings,"

the disclosures mandated by Rule 26(a)(1) should not include "discovery relating to a trade secret" precluded by CCP § 2019(d). To the extent the material compelled by Rule 26(a) overlaps with material precluded from discovery under CCP § 2019(d), the court could simply delay operation of the state statute until the defendant has discharged the obligations imposed by Rule 26(a).

**11.** Since CCP § 2019(d) does not affect plaintiff's pleading requirements, the statute does not conflict with Rules 8, 9 and 12.

337 U.S. 535, 538, 69 S.Ct. 1235, 1237, 93 L.Ed. 1524 (1949) (federal court must apply state statute precluding corporations not qualified to do business in state from filing suit); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 555–56, 69 S.Ct. 1221, 1230, 93 L.Ed. 1528 (1949) (federal court must apply state statute requiring plaintiff to post bond in stockholder's derivative action: although bond requirement had procedural component, state statute was substantive because it "creates a new liability where none existed before.").

 When a state rule is not "clearly substantive," *Erie* requires the court to analyze the probable effect non-application of the rule will have on the behavior of litigants or the outcome of the case. Specifically, the state rule should apply when the failure to do so would significantly affect the outcome of the litigation, encourage forum shopping, or result in "inequitable administration of the laws." *Gasperini*, 518 U.S. at 428, 116 S.Ct. at 2220 (quoting *Hanna*, 380 U.S. at 468, 85 S.Ct. at 1142). The court must determine whether failure to apply the state rule

> would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State, or whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court.

*Hanna*, 380 U.S. at 468 n. 9, 85 S.Ct. at 1142 n. 9; *see also Gasperini*, 518 U.S. at 431, 116 S.Ct. at 2221. Under this analysis, courts may apply ostensibly procedural rules when their non-application would create an incentive for plaintiffs to file actions in federal court. *See, e.g., Woods v. Holy Cross Hospital*, 591 F.2d 1164, 1168 (5th Cir.1979) (federal court must apply state statute requiring malpractice plaintiffs to submit claims to screening panel because statute serves state's substantive policies and failure to apply it would encourage forum shopping); *Stoner v. Presbyterian University Hospital*, 609 F.2d 109, 110 (3d Cir.1979) (federal court must apply state statute requiring plaintiffs to first submit claims to non-binding arbitration: although statute was more procedural than substantive, failure to apply it would relieve diversity litigants of legal burdens imposed on litigants in state court); *RTC Mortg. Trust 1994 N–1 v. Fidelity Nat. Title Ins. Co.*, 981 F.Supp. 334, 346–47 (D.N.J.1997) (federal court must apply state statute requiring malpractice plaintiffs to furnish defendant with affidavit from a licensed professional attesting to the merit of plaintiff's claims within 60 days after filing of answer); *State of Wisconsin Investment Bd. v. Plantation Square Assoc., Ltd.*, 761 F.Supp. 1569, 1579–80 (S.D.Fla.1991) (federal court must apply state statute preventing plaintiff from conducting discovery of defendant's net worth until claim for punitive damages survives motion to dismiss).

Finally, the court must determine if the state's interest in uniform enforcement of its laws is outweighed by any "countervailing federal interests." *Gasperini*, 518 U.S. at 432, 116 S.Ct. at 2222; *Byrd*, 356 U.S. 525, 537, 78 S.Ct. 893, 901, 2 L.Ed.2d 953 (1958). In *Byrd*, the Supreme Court held that the strong federal interest in the function of the jury—an interest embodied in the Seventh Amendment—required a federal court to submit disputed factual questions to a jury, even in light of a contrary state practice. *Id.* at 537–38, 78 S.Ct. at 900–01. Although the Court acknowledged that submitting factual questions to a jury could affect the outcome of cases, the state's interest was outweighed by the federal interest in maintaining trial by jury, an "essential characteristic" of the federal courts. *Id.*

Applying these principles, the court finds that several reasons compel application of CCP § 2019(d). First, the California Legislature enacted CCP § 2019(d) contemporaneously with, and as an inte-

gral part of, the Uniform Trade Secrets Act. The statute applies selectively to claims for trade secret misappropriation, directly limiting a plaintiff's right to protect its trade secrets. *S.A. Healy Co.*, 60 F.3d at 310 (noting the "class of pretty easy cases" where a rule is substantive "is where the state procedural rule, though undeniably 'procedural' in the ordinary sense of the term, is limited to a particular substantive area"). The statute was enacted to curb unsupported trade secret lawsuits routinely commenced to harass competitors and former employees. The California legislature understood that plaintiffs in trade secret cases are often unable to identify any trade secrets, even after months of extensive discovery. Trade secret claims are especially prone to discovery abuse since neither the court nor the defendant can delineate the scope of permissible discovery without an identification of plaintiff's alleged trade secrets. By restricting a plaintiff's ability to engage in discovery until it identifies its trade secrets "with reasonable particularity," CCP § 2019(d) strikes a balance between a plaintiff's right to protect its trade secrets and a defendant's right to be free from the burdens associated with unsupported trade secrets claims. *See Gasperini*, 518 U.S. at 429, 116 S.Ct. at 2220 (the state rule "contains a procedural instruction ... but the State's objective is manifestly substantive."). A federal court cannot separate CCP § 2019(d) from the whole of California's Uniform Trade Secrets Act without frustrating the legislature's legitimate goals and disregarding the purposes of *Erie*.

Second, CEI does not dispute that failure to apply CCP § 2019(d) in diversity cases would influence a plaintiff's choice of forum. A plaintiff with a weak trade secret claim would have ample reason to choose federal court if it offered a chance to circumvent the requirements of CCP § 2019(d). Non-application of CCP § 2019(d) would entitle a plaintiff to virtually unlimited discovery, enhancing its settlement leverage and allowing it to conform misappropriation claims to the evidence produced by the defendant in discovery. This would inequitably deprive defendants of the protections of CCP § 2019(d) and attract to federal court the unsupported trade secret lawsuits the statute was enacted to deter. *Cf. State of Wisconsin Investment Bd.*, 761 F.Supp. at 1580 ("Though the potential class of plaintiffs which would be tempted to forum shop ... is likely small, ... it is precisely that class of plaintiffs which the statute seeks to keep at bay.").

Third, the court cannot identify any countervailing federal interests outweighing the state's interest in enforcement of CCP § 2019(d). The statute promotes well-investigated claims, frames the appropriate scope of discovery, prevents needless discovery disputes, and enables defendants to form complete and well-reasoned defenses. As discussed previously, CCP § 2019(d) harmoniously coexists with various provisions of Rule 26 and enhances the court's ability to control discovery in trade secret cases.[12] *See RTC Mortg. Trust 1994 N–1*, 981 F.Supp. at 347 (recognizing that federal interests will rarely require displacement of state law where state law does not conflict with any federal rule or statute). Accordingly, the court holds that the principles of *Erie* require application of CCP § 2019(d).

## V. CONCLUSION

For the foregoing reasons, the court sustains defendant's objections to the magistrate judge's September 28, 1998 order. Gartner shall be entitled to rely on CCP § 2019(d) for the remainder of this litigation.

**IT IS SO ORDERED.**

12. *See supra* Part IV.b.