[Civ. No. 30896. Second Dist., Div. Five. Mar. 20, 1963.]

DIODES, INCORPORATED, Plaintiff and Appellant, v. GUSTAV H. D. FRANZEN et al., Defendants and Respondents.

Norman H. Kirshman for Plaintiff and Appellant.

Walker, Wright, Tyler & Ward and Nilsson, Robbins & Anderson and W. A. Caldecott for Defendants and Respondents.

HUFSTEDLER, J.—Plaintiff, Diodes, Incorporated ("Diodes"), appeals from a judgment in favor of defendants Franzen, Stump, Semtech Corporation ("Semtech") and Continental Device Corporation ("Continental"), entered after defendants' general and special demurrers to the third amended complaint were sustained without leave to amend. On appeal plaintiff contends that the third amended complaint pleaded facts sufficient to constitute a cause of action on the theories of "fraud and conspiracy," based upon claimed breach of fiduciary duties owed by the individual defendants to the plaintiff, for which the corporate defendants were vicariously liable, and that the cause of action was barred by neither limitations nor laches.

The third amended complaint and its predecessors, each of which was filed after demurrers had been sustained to the preceding complaint, alleged that plaintiff corporation, since its formation in 1959, has been engaged in the design and manufacture of diodes—semi-conductors rectifying electric current. Defendants Stump and Franzen were directors and officers, respectively president and vice president, of Diodes from its formation through about September 1960, and at the same time were salaried employees in complete control of Diodes' research and development program. During their association with Diodes and for some time thereafter, Stump and Franzen each owned 5,000 shares of Diodes stock. After Franzen and Stump left the plaintiff, they participated in forming Semtech.

Stump and Franzen unquestionably owed fiduciary duties to the plaintiff by reason of their positions as directors, officers and managing employees of the plaintiff. The question is whether the facts pleaded allege any actionable breach of

duty by either of them. The facts relating to the claimed breach of duty fall into three categories: (1) misappropriation of plaintiff's "secret process"; (2) nondisclosure to the plaintiff's board of directors of the details of the process developed by Stump and Franzen and nondisclosure of the individual defendants' plans to leave the corporation and to enter into competition with it; and (3) solicitation of plaintiff's employees to leave the plaintiff's employment.

## Misappropriation of Trade Secrets

No case has been cited to us, and we have found none, which discusses the sufficiency of the allegations of a complaint in an action based upon a misuse or misappropriation of a "secret process." There are two reasons for the paucity of authority: Very few cases have been decided in state courts at the pleading stage, and a major portion of the litigation concerning trade secrets has been conducted in the federal courts exercising diversity jurisdiction. ■ The federal cases since the adoption of the federal rules are not helpful on the pleading questions in an action brought in a state court in California, because federal cases use "notice pleading," whereas California uses "fact pleading." (Fed. Rules Civ. Proc., rule 8(a)(2); Code Civ. Proc., § 426. See discussion, 2 Witkin, Cal. Procedure (1954) §§ 161, 162, p. 1139 et seq.) The necessary elements of a cause of action are nevertheless discernible from many trade secret cases which have been fully tried in both the federal and state courts.

■ One who seeks protection against the use or disclosure of a trade secret must plead facts showing (1) the existence of subject matter which is capable of protection as a trade secret; (2) the secret was disclosed to the defendant, or to a person for whose conduct a defendant is liable, under circumstances giving rise to a contractual or other legally imposed obligation on the part of the disclosee not to use or disclose the secret to the detriment of the discloser; and (3) if the defendant is an employee or former employee of the plaintiff or if the defendant is charged with having received the secret from an employee or former employee, the facts alleged must also show that the public policy in favor of the protection of the complainant's interest in maintaining the secret outweighs the interest of the employee in using his knowledge to support himself in other employment. (Compare *Futurecraft Corp.* v. *Clary Corp.* (1962) 205 Cal.App.2d 279, 285-288 [23 Cal.Rptr. 198], with *Winston Research Corp.* v. *Minnesota Min. & Mfg. Co.* (9th Cir. 1965) 350 F.2d 134, 137-138, 140.)

Facts have been pleaded, sufficient to withstand a general demurrer, to impose a duty upon Stump and Franzen not to use or to disclose the plaintiff's trade secrets, if any.

A director, officer, or employee who, by reason of his relationship to his corporation, acquires trade secrets of his employer during his employment, cannot thereafter use nor disclose to another his employer's secret to the detriment of his employer. (E.g., *E. I. DuPont de Nemours Powder Co.* v. *Masland* (1917) 244 U.S. 100, 102 [61 L.Ed. 1016, 1019, 37 S.Ct. 575]; *Bancroft-Whitney Co.* v. *Glen* (1966) 64 Cal.2d 327, 350-351 [49 Cal.Rptr. 825, 411 P.2d 921]; *Langendorf United Bakeries, Inc.* v. *Phillips* (1936) 5 Cal.2d 150, 153 [53 P.2d 363]; *By-Buk Co.* v. *Printed Cellophane Tape Co.* (1958) 163 Cal.App.2d 157, 164-165 [329 P.2d 147].)

"A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers. . . . A trade secret is a process or device for continuous use in the operation of the business." (4 Rest., Torts, § 757, com. *b*; *Futurecraft Corp.* v. *Clary Corp., supra,* 205 Cal.App.2d at p. 289-290; see also *Winston Research Corp.* v. *Minnesota Min. & Mfg. Co., supra,* 350 F.2d at pp. 139-140; *Sarkes Tarzian, Inc.* v. *Audio Devices, Inc.* (S.D. Cal. 1958) 166 F.Supp. 250; *Sperry Rand Corp.* v. *Rothlein* (D. Conn. 1964) 241 F.Supp. 549, 560; Turner, The Law of Trade Secrets (1962) § 1, p. 160.)

The difficulty with the third amended complaint is the failure of plaintiff to plead facts showing that it ever had any trade secret to protect. The complaint does not directly aver that Stump and Franzen, or any other employee of plaintiff, developed any secret process or possessed any allied confidential information during the association of Stump and Franzen with the plaintiff. The plaintiff's third amended complaint speaks in circumlocutions and innuendoes. The subject matter of the so-called "secret process" is not stated, except to hint that it had something to do with the manufacture of diodes. The allegations amount to this: Stump and Franzen told the board of directors of plaintiff that they had developed a metallurgical process in manufacturing diodes, but did not tell the board the details of that process. Plaintiff

never found out whether or not Stump and Franzen were telling the truth about their work, because they concealed their knowledge from the board of directors and removed all information about their "secret process" when they left the plaintiff.[1]

■ One who seeks to protect his trade secrets from wrongful use or disclosure does not have to spell out the details of the trade secret to avoid a demurrer to a complaint. To so require would mean that the complainant would have to destroy the very thing for which he sought protection by making public the secret itself. (E.g., *Eastman Kodak Co. v. Powers Film Products, Inc.* (1919) 189 App.Div. 556, 561 [179 N.Y.S. 325].)

The plaintiff must nevertheless allege the ultimate facts showing the existence of a trade secret or other confidential data to state such a cause of action. An averment simply that the plaintiff has a "secret process" is a bare legal conclusion. (*Show Management v. Hearst Publishing Co.* (1961) 196 Cal. App.2d 606, 620 [16 Cal.Rptr. 731].)

---

[1]The third amended complaint alleged: "VIII That neither defendant FRANZEN nor defendant STUMP made any disclosure to the other members of the board of directors of plaintiff as to any processes discovered or developed other than to inform the board of directors from time to time that such a process had been developed from said research and development program and progress was being made in the development of a satisfactory production unit. That from time to time between June 1959 and September 1960, defendants FRANZEN and STUMP advised and represented to plaintiff and its board of directors that they would make no disclosure of plaintiff's secret processes to any third persons. . . . XI That in September 1960, defendants FRANZEN and STUMP resigned their positions as officers and directors of plaintiff and terminated their relationship with plaintiff. Neither at the time of leaving nor thereafter did either defendant FRANZEN or defendant STUMP divulge to the remaining directors or to the newly elected officers of the plaintiff the secrets of the production of said diodes. That although a search of the corporate papers was made, plaintiff's officers and directors were unable to find any papers prepared by said defendants describing said processes. XII That plaintiff learned of the secret process only with the assistance of one of plaintiff's employees who remained with plaintiff after the departure of defendants FRANZEN and STUMP. XIII That during the month of May, 1962 plaintiff employed one ROBERT SAICHEK to do sales promotion work for plaintiff. Saichek, a person with an engineering background, described to plaintiff's officers a paper that was being prepared by defendant SEMTECH CORPORATION or defendant CONTINENTAL DEVICE CORPORATION for release and printing in the electronic trade journals concerning a diode manufacturing process that said corporations had allegedly perfected. As Saichek described the process to be related in said publications, plaintiff's officers realized that the process being described was the same process as that developed by plaintiff under the supervision of defendants FRANZEN and STUMP."

Although the words "secret process" are repeatedly used in the remaining paragraphs of the complaint, they are never more specifically defined than they are in the quoted paragraphs.

■ Before a defendant is compelled to respond to a complaint based upon claimed misappropriation or misuse of a trade secret and to embark on discovery which may be both prolonged and expensive, the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies. ■ If the subject matter of the claimed trade secret is a manufacturing process, the plaintiff must not only identify the end product manufactured, but also supply sufficient data concerning the process, without revealing the details of it, to give both the court and the defendant reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery. No more comprehensive rules for pleading can be generally enunciated because no inclusive definition of trade secrets is possible. [3c] Examining all of the averments of the third amended complaint with that degree of charity which must be accorded pleadings, the third amended complaint fails to meet the most minimal requirements for stating a claim based upon misuse or misappropriation of trade secrets.[2]

## Nondisclosures

The nondisclosures are of two kinds: the failure to disclose to the board of directors the details of any process or processes developed by Stump and Franzen, and the failure to

---

[2]In plaintiff's first three complaints the allegations supplied at least a clue to the subject matter of plaintiff's claimed secret process, or processes. (The plaintiff uses both the singular and plural indiscriminately throughout the pleadings.) Paragraph VII of the original complaint alleged: ''During the period commencing in or about June 1959, and continuing through in or about September 1960, defendants, STUMP and FRANZEN, in the course of their duties as officers and directors of plaintiff, and at great cost and expense to plaintiff, developed secret, unique and novel processes for the manufacture of diodes. Specifically, defendants, STUMP and FRANZEN, using plaintiff's funds, facilities, materials and employees, developed for plaintiff's sole and exclusive use, secret, unique and novel processes with respect to: (a) P-N junction formed of silicon; and (b) Metalizing of ceramic tubes for encapsulation of the diode rectifier.''

We do not pass upon the sufficiency of that description to withstand demurrer because the complaints containing that description were superseded by the third amended complaint. (*Rolley, Inc.* v. *Merle Norman Cosmetics, Inc.* (1954) 129 Cal.App.2d 844, 852 [278 P.2d 63; 282 P.2d 991].) Paragraph VII was repleaded in the first and second amended complaints, with slight variations, but was completely abandoned in the third amended complaint without explanation.

disclose the individual defendants' plans to leave the plaintiff and enter into competition with it.

In attempting to plead a breach of fiduciary duty by failure of Franzen and Stump to disclose the details of their work, the complaint is again characterized by indirection. There is no averment that those defendants did not disclose the details of their work to the corporation, but only that there was nondisclosure to the members of the board of directors other than Franzen and Stump. The circumlocution was purposeful, because superseded pleadings had averred disclosure of such information by the individual defendants to certain of plaintiff's key employees.[3] "Facts once alleged cannot be withdrawn from consideration by merely filing an amended pleading omitting them without explanation." (*Lee* v. *Hensley* (1951) 103 Cal.App.2d 697, 709 [230 P.2d 159]; *Wennerholm* v. *Stanford University School of Medicine* (1942) 20 Cal.2d 713, 716 [128 P.2d 522, 141 A.L.R. 1358]; *Tostevin* v. *Douglas* (1958) 160 Cal.App.2d 321, 327 [325 P.2d 130].) No facts are alleged in the final pleading from which we could conclude that there was some breach of duty on the individual defendants' parts in failing to disclose the details of their work to the board of directors, even if we assume that they had a duty to disclose those details to the corporation. Moreover, there are no allegations from which any detriment to the corporation could be inferred from the failure of Franzen and Stump to disclose these matters to the board of directors.

The failure of Franzen and Stump to disclose their plans to leave the plaintiff and thereafter to go into competition with it is not a breach of their fiduciary duties to the plaintiff in absence of facts showing that nondisclosure was harmful to the corporation. No such facts were pleaded. (*Bancroft-Whitney Co.* v. *Glen, supra,* 64 Cal.2d at pp. 346-347.)

---

[3]The second amended complaint alleged that plaintiff "discovered the details of the aforesaid processes only after the resignations of the individual defendants [in September and October of 1960] with the aid of the employee described in Paragraph XIX above." Paragraph XIX stated, in part, that "Plaintiff's Junction Process Supervisor, in charge of the secret process area, [was] the one employee to whom defendants, FRANZEN and STUMP, had disclosed all of the details of the aforesaid processes . . ." Plaintiff also alleged: "Within a period of several months following the resignations of the individual defendants, the key employees [*sic*] to whom . . . Franzen and Stump had disclosed details of the aforesaid processes, terminated their positions with Plaintiff, and associated themselves with the [defendants'] newly formed company . . ."

## Solicitation of Employees

 As a general principle, one who unjustifiably interferes with an advantageous business relationship to another's damage may be held liable therefor. The product is bottled under a variety of labels, including unfair competition, interference with advantageous relations, contract interference, and inducing breach of contract. (E.g., *Speegle* v. *Board of Fire Underwriters* (1946) 29 Cal.2d 34, 39 [172 P.2d 867]; *Imperial Ice Co.* v. *Rossier* (1941) 18 Cal.2d 33, 36 [112 P.2d 631]; *Romano* v. *Wilbur Ellis & Co.* (1947) 82 Cal.App.2d 670, 673 [186 P.2d 1012]; *Shida* v. *Japan Food Corp.* (1967) 251 Cal.App.2d 864, 866-867 [60 Cal.Rptr. 43].)

 Even though the relationship between an employer and his employee is an advantageous one, no actionable wrong is committed by a competitor who solicits his competitor's employees or who hires away one or more of his competitor's employees who are not under contract, so long as the inducement to leave is not accompanied by unlawful action. (*Buxbom* v. *Smith* (1944) 23 Cal.2d 535, 547 [145 P.2d 305]; *Triangle Film Corp.* v. *Artcraft Pictures Corp.* (2d Cir. 1918) 250 F. 981; *Harley & Lund Corp.* v. *Murray Rubber Co.* (2d Cir. 1929) 31 F.2d 932; *Vincent Horwitz Co.* v. *Cooper* (1945) 352 Pa. 7 [41 A.2d 870].) In the employee situation the courts are concerned not solely with the interests of the competing employers, but also with the employee's interests. The interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change.

However, if either the defecting employee or the competitor uses unfair or deceptive means to effectuate new employment, or either of them is guilty of some concomitant, unconscionable conduct, the injured former employer has a cause of action to recover for the detriment he has thereby suffered. Neither the wrongdoing employee nor his new employer will be heard to say that his conduct was justifiable as a part of competitive strife. Their interests under the circumstances are neither equal nor superior to those of the former employer. (E.g., *Buxbom* v. *Smith, supra,* 23 Cal.2d 535, 546-547; *George* v. *Burdusis* (1942) 21 Cal.2d 153, 161 [130 P.2d 399]; *Globe & Rutgers Fire Ins. Co.* v. *Firemen's Fund Ins. Co.* (1910) 97 Miss 148 [52 So. 454, 29 L.R.A. N.S. 869]; *Driver* v. *Smith* (1918) 89 N.J.Eq. 339 [104 A. 717]. See also *Hitchman*

*Coal & Coke Co.* v. *Mitchell* (1917) 245 U.S. 229, 259 [62 L.Ed. 260, 279, 38 S.Ct. 65]; Rest., Torts, §§ 766-769.) *A fortiori*, conduct of this type is tortious by one who occupies or has occupied a fiduciary relationship with the former employer. (*Bancroft-Whitney Co.* v. *Glen, supra*, 64 Cal.2d at pp. 344-348.) Did the third amended complaint successfully charge the defendants with such wrongful practices?

▮ Plaintiff alleged that during the individual defendants' association with the plaintiff they commenced negotiations with Van Winkle to join in a competing venture and to solicit such of plaintiff's employees as they might require to work for them in the new organization. Pursuant to the scheme Franzen and Stump contacted each of said employees to solicit their employment. Many of plaintiff's key production personnel "concealed from plaintiff that they were leaving to take positions with defendant Semtech." There is no direct allegation that the solicited employees, other than Franzen and Stump themselves, were thereafter employed by Semtech. There are no adequate allegations that the individual defendants' solicitation of plaintiff's employees was accompanied by unfair tactics such as those discussed in the *Glen* case. (64 Cal.2d at pp. 348-353; see also *Fidelity etc. Co.* v. *Federal etc. Co.* (1933) 217 Cal. 307, 314-315 [18 P.2d 950].) Had the averments of the third amended complaint sufficiently alleged the misappropriation of trade secrets as a concomitant of the solicitation, such unfair tactics would have pulled the plaintiff over the hump, but the pleading failed to do so.

▮ The conspiracy allegations add nothing to the complaint except a basis for imposing vicarious responsibility for one another's acts upon the several defendants. (See *Continental Car-Na-Var Corp.* v. *Moseley* (1944) 24 Cal.2d 104, 112 [148 P.2d 9]; 2 Witkin, Cal. Procedure (1954), *supra*, § 469, pp. 1457-1458.) Because the complaint did not adequately set forth facts constituting a breach of duty upon the part of Franzen and Stump, there is no basis for any vicarious liability on the part of the other defendants. Continental, acting through Van Winkle, as a competitor of plaintiff, was not held to as high a standard of conduct as were Franzen and Stump. The facts alleged fall substantially short of pleading employee piracy by either Continental or Semtech, and therefore no cause of action is stated against Continental or Semtech or vicariously against Franzen and Stump.

▮ Moreover, no facts are pleaded to sustain plaintiff's

claims either for damages or an injunction based upon defendants' solicitation of plaintiff's key employees.

The proper measure of compensatory damages for wrongful interference with a business is: "the diminution of the value of the business traceable to the wrongful act, as reflected by loss of profits, expenses incurred, or similar concrete evidence of injury. [Citations omitted.]" (*Steiner* v. *Long Beach Local #128* (1942) 19 Cal.2d 676, 689 [123 P.2d 20]; *Buxbom* v. *Smith, supra,* 23 Cal.2d at p. 541; see also *Continental Car-Na-Var* v. *Moseley, supra,* 24 Cal.2d at p. 113.) Loss of custom and injuries to business goodwill arising from a tort are considered special damages and, as such, must be pleaded with particularity. (See, e.g., *Myers* v. *Stephens* (1965) 233 Cal.App.2d 104, 121 [43 Cal.Rptr. 420]; 2 Witkin, Cal. Procedure (1954) *supra,* § 471.) The damage averments as pleaded are vague, but even if we assume that they were clear enough to withstand demurrer, there are no facts alleged to show any connection between that damage and the defendants' solicitation of plaintiff's employees.[4] There is no obvious causal relationship between plaintiff's loss of some of its employees and a loss of its customers. No facts are alleged to show that the departing employees had any influence with the plaintiff's customers. (Cf. *George* v. *Burdusis, supra,* 21 Cal.2d at p. 160; *California Intelligence Bureau* v. *Cunningham* (1948) 83 Cal. App.2d 197, 202 [188 P.2d 303].) There is thus no alleged detriment which flowed from the claimed wrongful solicitation of employees. From the fact alone that some of the plaintiff's employees, not under contract, were induced to leave the plaintiff's employment, it does not follow that plaintiff necessarily suffered any damage. The absence of adequate averments to plead special damage causally related to the claimed wrong is fatal to a cause of action in tort based upon solicitation of plaintiff's employees by the defendants, or any of them.

The allegations relating to a claim for injunctive relief are even more general than are the allegations respect-

---

[4]The sole allegation in the third amended complaint which purports to allege any compensatory damages is paragraph XXIII: "As a consequence of the aforesaid acts of defendants, and each of them, plaintiff has been deprived of the patronage of many customers who otherwise would have patronized plaintiff, all to plaintiff's damage in amounts unknown to plaintiff."

ing damages.[5] An examination of the prayer of the third amended complaint makes clear that the plaintiff did not seek an injunction to restrain defendants from soliciting plaintiff's employees.

The trial court correctly sustained the general demurrer to the third amended complaint on the ground that it failed to state facts sufficient to constitute a cause of action. The failure to grant further leave to amend was not an abuse of discretion. A comparison of the successive verified complaints shows that the plaintiff added and omitted facts without explanation in an effort to avoid the repeated demurrers. The trial court was entitled to conclude that the explanation for the numerous variations in the complaints was that the "pleaders were more intent on some theory of recovery than the allegation of facts as they really existed" (*Harrison* v. *Hanson* (1958) 165 Cal.App.2d 370, 378 [331 P.2d 1084]), and it was not obliged to give the plaintiff further opportunity to exercise its ingenuity in trying to state a cause of action. It is unnecessary to discuss the remaining contentions of the parties concerning the application of limitations and laches.

The judgment of dismissal is affirmed.

Stephens, J., and Aiso, J. pro tem.,* concurred.

---

[5] Paragraph XXV of the third amended complaint states: "Defendants, and each of them, have continued and unless restrained by this Court will continue the acts complained of, all to plaintiff's damage. No adequate remedy at law exists, as computation of damages will be extremely difficult, requiring a multiplicity of judicial proceedings. In addition thereto, defendants' continued unlawful use of plaintiff's secret, unique and novel processes will cause irreparable damage to plaintiff and destroy the value and goodwill of plaintiff's business."

*Assigned by the Chairman of the Judicial Council.