[No. B204003. Second Dist., Div. Four. Mar. 17, 2009.]

WILLIAM BRESCIA, Cross-complainant and Appellant, v.
KEITH ANGELIN et al., Cross-defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts I. and III.

134

COUNSEL

Manning & Marder, Kass, Ellrod, Ramirez, John A. Marder, Kevin H. Louth and Sylvia Havens for Cross-complainant and Appellant.

Epport, Richman & Robbins, Mark Robbins, Christopher Nelson and Laura E. McSwiggin for Cross-defendants and Respondents.

OPINION

**WILLHITE, Acting P. J.**—Code of Civil Procedure section 2019.210 (hereafter section 2019.210) provides: "In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act (Title 5 (commencing with Section 3426) of Part 1 of Division 4 of the Civil Code), before commencing discovery relating to the trade secret, the party alleging the misappropriation shall *identify the trade secret with reasonable particularity* subject to any orders that may be appropriate under Section 3426.5 of the Civil Code." (Italics added.) In the published portion of our opinion, we hold that section 2019.210 does not require in every case that a trade secret claimant explain how the alleged trade secret differs from the general knowledge of skilled persons in the field to which the secret relates. Rather, such an explanation is required only when, given the nature of the alleged secret or the technological field in which it arises, the details provided by the claimant to identify the secret are themselves inadequate to permit the defendant to learn the boundaries of the secret and investigate defenses or to permit the court to understand the designation and fashion discovery. Further, the trade secret designation is to be liberally construed, and reasonable doubts regarding its adequacy are to be resolved in favor of allowing discovery to go forward.

## BACKGROUND

William Brescia appeals from the judgment of dismissal entered in favor of respondents Sylvester Stallone and John Arnold after the trial court sustained, without leave to amend, respondents' demurrer to Brescia's third amended cross-complaint. (For ease of reference, we refer to the operative pleading simply as the cross-complaint.) Brescia alleges that respondents participated with other cross-defendants in misappropriating Brescia's trade secrets, which he describes in the cross-complaint as follows: "a formula, manufacturing process, marketing plan, funding plan and a distribution and sales plan for a high protein, low carbohydrate pudding with an extended shelf life and a

stable and appealing consistency and most important, when mass produced, an appetizing flavor."

Briefly, the background to this appeal is as follows. After a dispute at a trade show at which Brescia accused Keith Angelin and his company, Freedom Foods, of stealing his ideas, Angelin and Freedom Foods sued Brescia for trade libel and other claims. In response, Brescia filed his cross-complaint. Brescia alleges that he developed his pudding product, called Pro Pudding Pak, with the assistance of Christopher Scinto, a food scientist, who worked directly for Brescia. The high protein, low carbohydrate qualities of the pudding were unique, unlike any other pudding on the market. Brescia contracted with two companies, Performance Worldwide USA, Inc. (Performance) and Instoné, LLC, for the sale and distribution of the pudding, subject to confidentiality and nondisclosure provisions. Thereafter, Keith Angelin, who had been vice-president of marketing for Performance, left that company and formed his own, Freedom Foods, Inc. Angelin, Freedom Foods, Instone, and Christopher Scinto then conspired to steal Brescia's ideas, and Freedom Foods and Instone began producing and selling a pudding based on Brescia's formula and business plan.

Brescia named as cross-defendants, among others, Angelin, Freedom Foods, Scinto, and Instone. He added respondents as individual cross-defendants in November 2006, more than two years after the cross-complaint was initially filed. He alleges that respondent Stallone is chairman of the board of Instone, and respondent Arnold is chief executive officer. Of the named cross-defendants, only respondents are parties to this appeal. Moreover, although Brescia's cross-complaint alleged several causes of action, the only one relevant here is his statutory claim against respondents under the Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.) for misappropriation of trade secrets.

In April 2007, respondents filed motions for a protective order regarding Brescia's noticing their depositions and requesting production of documents relating to their finances. The motions argued, inter alia, that Brescia refused to identify his alleged trade secrets with the reasonable particularity required by section 2019.210, and that, therefore, he was not entitled to discovery in his trade secret action. (Respondents were the only cross-defendants to seek a protective order for Brescia's failure to comply with § 2019.210. Discovery had long ago commenced as to the other cross-defendants.)

In opposing respondents' motions, Brescia argued that he had adequately described his trade secrets in his cross-complaint, and also that he had

produced documents in discovery (identified by Bates stamp number) that would "reveal evidence [of the] formula and manufacturing process." At a hearing in May 2007, the court ruled that Brescia had not yet adequately identified the trade secret. The court continued the protective order motions to July 2007, and ordered Brescia to make a further disclosure.

The next day, Brescia filed a notice of compliance with the court's order. This May 2007 trade secret designation, filed under seal, grouped the alleged secrets into the categories of "Marketing Strategies," "Budget and Finance," "Formula," and "Manufacturing Process." Each classification referred to attached documents (305 pages in all) that, according to Brescia, "specifically detail[ed] each and every trade secret misappropriated."

In response to Brescia's trade secret designation, respondents filed a supplemental motion for a protective order regarding the initial round of discovery, and another separate protective order motion directed against a second round of discovery. Respondents argued that Brescia still had not identified his alleged trade secrets with the reasonable particularity required by section 2019.210. Instead, he had provided 305 pages of previously disclosed, nonconfidential documents that failed to distinguish what the purported trade secrets were. Further, relying on *Advanced Modular Sputtering, Inc. v. Superior Court* (2005) 132 Cal.App.4th 826, 835 [33 Cal.Rptr.3d 901] (*Advanced Modular*) respondents argued that Brescia failed to distinguish the purported trade secrets from matters generally known to skilled persons in the commercial food science industry.

In opposition, Brescia argued that, by citing to specific pages in the documents attached to his trade secret designation, he had adequately specified his trade secrets. He also noted that he had detailed the formula for his pudding in discovery responses.

Hearing respondents' motions in July 2007, the court ruled that Brescia's trade secret description was inadequate because, by citing to voluminous documents, it obscured rather than refined the description. The court continued respondents' protective order motions, and invited Brescia's counsel to "succinctly and with particularity lay out the trade secrets without surplusage," instead of "essentially hiding the alleged trade secret in plain view by putting lots of clutter around it."

In August 2007, Brescia filed under seal the trade secret designation that is at issue in this appeal. In it, he identified two alleged trade secrets: his pudding formula and his manufacturing process. He described his pudding

formula, as follows: "Attached under seal as exhibit 1 is a single page, containing a list of the 15 specific ingredients that constituted Brescia's pudding formula in the last quarter of 2003. The list identifies each ingredient by its common name and the percentage it constitutes of the total pudding. The second list identifies the same 15 ingredients listed by their supplier and brand name. Brescia alleges that this formula is a trade secret." As promised, exhibit 1 contained two lists, one of which gave the common name of 15 ingredients and their respective percentages in the final product ranging from 82.6 percent to 0.03 percent, and the other of which gave the brand name and supplier.

The trade secret designation described Brescia's manufacturing process as follows: "Attached under seal as exhibit 2 is a single page description of the manufacturing process for pudding described above as of the last quarter of 2003. Brescia alleges that this manufacturing process is a trade secret." The attached exhibit listed each step in the mixing, testing, and code marking of the pudding.

Respondents filed additional briefing, arguing that Brescia's new trade secret designation was insufficient because neither the formula nor the manufacturing process was distinguished from matters within the general knowledge of persons skilled in the commercial food science field. Respondents requested that the court take judicial notice of certain documents from the United States Patent and Trademark Office. The documents related to a patent application made by cross-defendant Christopher Scinto, who (according to Brescia's cross-complaint) allegedly helped Brescia develop his formula, and who claimed to have developed the formula for the pudding sold by Freedom Foods and distributed by Instone. The documents showed that the Patent and Trademark Office rejected Scinto's patent application, concluding that the high protein, low carbohydrate pudding formula submitted by Scinto and its ingredients would have been "obvious" to persons of "ordinary skill" in the food science industry when the formula was developed. Respondents argued that, because Scinto's pudding formula and ingredients were obvious to persons of ordinary skill in the industry, Brescia "should be required, as part of his designation, to describe what it is about his formula that distinguishes it from matters of general knowledge within the food science industry, and thus makes it a trade secret."

On September 20, 2007, the court once again heard argument on the sufficiency of the section 2019.210 designation in connection with respondents' motions for a protective order. In the meantime, respondents had filed a demurrer to Brescia's cross-complaint, along with a motion to strike, which were also scheduled for hearing the same day.

At the September 2007 hearing, the court granted respondents' request for judicial notice of the Patent and Trademark Office records, and stated that its tentative ruling was that Brescia's trade secret designation was inadequate. Relying on *Advanced Modular*, the court reasoned that Brescia's trade secret designation was defective, because it made "no attempt . . . to identify why certain aspects or all of the aspects of the manufacturing process are anything other than matters generally known to persons skilled in the field," and "no attempt . . . to indicate why the peculiar product formulation here that is stated with precision is a trade secret, as opposed to the typical ingredients involved in formulating other low-calorie, low-fat puddings." As we explain below in connection with Brescia's contention that the court's procedure was unauthorized, the parties, in an attempt to expedite any appeal, stipulated that if the court determined the trade secret designation insufficient, it could use respondents' demurrer to the cross-complaint as a procedural device to dismiss Brescia's trade secret misappropriation claim for· failure to comply with section 2019.210.

The court then heard argument from Brescia's attorney, who contended that the trade secret designation was adequate. He distinguished *Advanced Modular*, on which the court relied in its tentative ruling, on the ground that it dealt with a very complicated technical area in which it would be difficult for a court to determine whether the designation was sufficient. Brescia, however, stated a precise formula and manufacturing process for a pudding. Further, the law did not require that information be patentable in order to constitute a trade secret.

The court commented that Brescia's submission was silent on the question whether his alleged trade secrets were known to skilled persons in the field. The court explained: "So by its silence it's doomed to failure, because there's no attempt even to commence to describe why this formula is unique and not known to others. [¶] It just is a formula. Likewise, it is a cooking or manufacturing process of many steps. Some of which apparently, according to matters of which I believe I can take judicial notice are actually fairly familiar when you are trying to make a comparable product." The court ruled that the trade secret designation was inadequate, and stated: "[P]ursuant to the advance stipulation of the parties, the demurrer [to the cross-complaint] is deemed sustained as to [respondents] without leave to amend." The court later entered a judgment of dismissal, and, following denial of his motion for reconsideration, Brescia appealed.

## DISCUSSION

I. *Sustaining the Demurrer for Failure to Comply with Section 2019.210*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *The Adequacy of Brescia's August 2007 Trade Secret Designation*

Brescia contends that the trial court erred in finding his trade secret designation inadequate for failing to explain how his alleged trade secrets differ from matters within the general knowledge of skilled persons in the field of commercial food science. In the unusual procedural posture of this case, we deem this issue to be one of law which we review de novo, depending on undisputed facts (the contents of Brescia's Aug. 2007 trade secret designation) and the interpretation of section 2019.210.

■ Although we do not agree with Brescia's contention that a trade secret claimant can *never* be required to particularize how the alleged trade secret differs from prior products, we agree that the trial court erred in imposing such a requirement here. We conclude that whether a trade secret designation adequately distinguishes the allegedly protected information from the general knowledge of skilled persons in the field is a function of the particularity of the designation—that is, a function of whether the stated details themselves are sufficient, given the nature of the alleged secret and the technology in which it arises, to permit the defendant to ascertain whether and in what way the information is distinguished from matters already known, and to permit the court to fashion appropriate discovery. Absent a showing that the details alone, without further explanation, are inadequate to permit the defendant to discern the boundaries of the trade secret so as to prepare available defenses, or to permit the court to understand the identification so as to craft discovery, the trade secret claimant need not particularize how the alleged secret differs from matters already known to skilled persons in the field. Further, consistent with precedent, the trade secret designation is to be liberally construed, and reasonable doubts regarding its adequacy are to be resolved in favor allowing discovery to go forward.

A. *Section 2019.210 and* Advanced Modular

■ The Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.) creates a statutory cause of action for the misappropriation of a trade secret. (See 13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 86, pp. 382–383.) It

---

*See footnote, *ante*, page 133.

defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: [¶] (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and [¶] (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Civ. Code, § 3426.1, subd. (d).)

When adopting the Uniform Trade Secrets Act in 1984, the California Legislature also enacted a separate statutory provision, now found in section 2019.210 (part of the Civil Discovery Act; Code Civ. Proc., § 2016.010 et seq.), which requires, in relevant part, that "[i]n any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act . . . , before commencing discovery relating to the trade secret, the party alleging the misappropriation shall *identify the trade secret with reasonable particularity* . . . ." (Italics added; see *Computer Economics, Inc. v. Gartner Group, Inc.* (S.D.Cal. 1999) 50 F.Supp.2d 980, 984–986 (*Computer Economics*) [discussing legislative history of Code Civ. Proc., former § 2019, subd. (d)].) The statute was intended to codify *Diodes, Inc. v. Franzen* (1968) 260 Cal.App.2d 244, 251–252 [67 Cal.Rptr. 19] (*Diodes*), that before a trade secret defendant must submit to potentially costly litigation and discovery, "the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." (*Id.* at p. 253.) The purpose of such a requirement, as expressed in *Diodes*, was to "supply sufficient data . . . to give both the court and the defendant reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery." (*Ibid.*)

It has since been said that section 2019.210 serves four interrelated goals: " 'First, it promotes well-investigated claims and dissuades the filing of meritless trade secret complaints. Second, it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets. [Citations.] Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope. [Citations.] Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation. [Citation.]' " (*Advanced Modular, supra,* 132 Cal.App.4th at pp. 833–834, quoting *Computer Economics, supra,* 50 F.Supp.2d at p. 985.)

The leading case construing section 2019.210 is *Advanced Modular, supra,* 132 Cal.App.4th 826, which involved alleged trade secrets in the field of "sputtering"—"the process of depositing a thin and even film of material onto a silicon wafer or other substrate." (*Id.* at p. 830.) The plaintiff manufactured sputtering equipment, and claimed that the defendant misappropriated eight trade secrets in manufacturing its own sputtering machine. (*Id.* at pp. 831, 836.) The defendant contended that the plaintiff's trade secret designations were inadequate under section 2019.210, and produced expert witness declarations to show that the alleged trade secrets were "too vaguely described to distinguish them from information that is already known in the industry." (132 Cal.App.4th at p. 831.) The plaintiff, in turn, produced expert declarations stating "that the trade secrets [were] adequately described, that they involve[d] information not commonly known in the industry, and that [the defendant's] experts [were] being purposefully obtuse when they claim[ed] confusion over the nature or boundaries of the alleged trade secrets." (*Ibid.*)

 In construing section 2019.210, the court observed that "[t]he letter and spirit of section 2019.210 require the plaintiff, subject to an appropriate protective order, to identify or designate the trade secrets at issue with ' "sufficient particularity" ' to limit the permissible scope of discovery by distinguishing the trade secrets ' "from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." ' [Citations.]" (*Advanced Modular, supra,* 132 Cal.App.4th at p. 835.) Analogizing a trade secret designation to a pleading, the court stressed that the designation should be liberally construed in favor of the trade secret claimant, and that doubts about its adequacy should be resolved in favor of permitting discovery to go forward. (*Id.* at pp. 835, 836–837.)

 Further, the court emphasized the flexibility of the statutory standard: " 'Reasonable particularity' mandated by section 2019.210 does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret at the outset of the litigation. Nor does it require a discovery referee or trial court to conduct a miniature trial on the merits of a misappropriation claim before discovery may commence. Rather, it means that the plaintiff must make some showing that is reasonable, i.e., fair, proper, just and rational [citation], under all of the circumstances to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits. [Citations.] [¶] *The degree of 'particularity' that is 'reasonable' will differ, depending on the alleged trade secrets at issue in each case.* Where, as here, the alleged trade secrets consist of incremental variations on, or advances in the state of the art in a highly

specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field. Nothing in section 2019.210 precludes the trial court from considering relevant evidence, including expert witness declarations, on the adequacy of a designation to describe the alleged trade secrets and distinguish them from prior art. But it remains true that, *at this very preliminary stage of the litigation, the proponent of the alleged trade secret is not required, on pain of dismissal, to describe it with the greatest degree of particularity possible, or to reach such an exacting level of specificity that even its opponents are forced to agree the designation is adequate.*" (*Advanced Modular, supra*, 132 Cal.App.4th at pp. 835–836, italics added.)

■ Applying this standard, the court found the plaintiff's trade secret designation adequate under section 2019.210: "Here, Sputtered Films [the plaintiff] has identified eight alleged trade secrets, each with several discr[ete] features that, in combination with one another, form the alleged trade secrets. It has described how it believes the combination of these features distinguish the alleged trade secrets from the prior art, or matters within the general knowledge of persons in the sputtering industry. AMS and its experts contend the alleged trade secrets are well known in the industry and that they have been described in a vague or overbroad manner. Sputtered Films's experts dispute both contentions. We have no doubt the experts will continue to disagree on these crucial questions. For our purposes, at this prediscovery stage of the proceedings, it is appropriate to recognize the existence of this credible dispute, but not necessarily to resolve it. Where, as here, credible experts declare that they are capable of understanding the designation and of distinguishing the alleged trade secrets from information already known to persons in the field, the designation should, as a general rule, be considered adequate to permit discovery to commence. Our discovery statutes are designed to ascertain the truth, not suppress it. Any doubt about discovery is to be resolved in favor of disclosure." (*Advanced Modular, supra*, 132 Cal.App.4th at pp. 836–837.)

## B. *Distinguishing the Trade Secret from Prior Art*

At issue in the present case is Brescia's August 2007 trade secret designation. In finding that designation inadequate, the court reasoned that *Advanced Modular* required Brescia to specify precisely how his pudding formula and manufacturing process were distinguished from matters known to skilled persons in the commercial food science industry. We disagree that *Advanced Modular* required such a showing here.

■ The seminal decision is *Diodes*, the genesis of section 2019.210. The court in *Diodes* stated that the trade secret complainant "should describe the subject matter of the trade secret *with sufficient particularity to separate it from* matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and *to permit the defendant to ascertain* at least the boundaries within which the secret lies." (*Diodes, supra,* 260 Cal.App.2d at p. 253, italics added; see also *Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1453–1454 [125 Cal.Rptr.2d 277] [finding several trade secret designations adequate because they were "drafted with sufficient detail to permit [the defendant] to identify and understand the protected information," and finding one "too broad to enforce because it [did] not differentiate between truly secret information . . . and new product information which has been publicly disclosed"].) In other words, as envisioned in *Diodes*, the burden on the trade secret claimant is to provide a level of detail adequate to distinguish the subject information from general knowledge or knowledge of skilled persons in the field. The defendant may then use that level of detail to determine the limits of the trade secret by investigating whether the information disclosed is within the public domain (meaning it is not a trade secret (Civ. Code, § 3426.1, subd. (d)(1)), or to develop the defenses of independent development or ready ascertainability (meaning there was no misappropriation).[1] Because section 2019.210 was intended to codify *Diodes*, the statute should be interpreted consistent with it. **(8)** Thus, at its inception, section 2019.210 was intended to require the trade secret claimant to identify the alleged trade secret with adequate detail to allow the defendant to investigate how it might differ from matters already known and to allow the court to craft relevant discovery.

*Advanced Modular* does not depart from the principle that the level of particularity determines whether the designation adequately distinguishes the alleged trade secret from prior art. *Advanced Modular* observed that the trade secret plaintiff must identify the alleged trade secrets "with ' "sufficient particularity" ' to limit the permissible scope of discovery by distinguishing the trade secrets ' "from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." ' [Citations.]" (*Advanced Modular, supra,* 132 Cal.App.4th at p. 835.) In this language, the court was not creating a requirement for all cases, divorced from the particularity requirement itself, of explaining how the trade secret differs from prior art. The court was paraphrasing a statement in *IMAX Corp. v.*

---

[1] The defense of independent derivation derives from Civil Code section 3426.1, subdivision (a), which provides in part that "[r]everse engineering or independent derivation alone shall not be considered improper means" of acquiring a trade secret. Similarly, that the alleged trade secret is readily ascertainable by proper means is a defense to the element of misappropriation. (*ABBA Rubber Co. v. Seaquist* (1991) 235 Cal.App.3d 1, 21–22, fn. 9 [286 Cal.Rptr. 518].)

*Cinema Technologies, Inc.* (9th Cir. 1998) 152 F.3d 1161, 1164–1165 (quoting *Universal Analytics v. MacNeal-Schwendler Corp.* (C.D.Cal. 1989) 707 F.Supp. 1170, 1177), which reads in full: "The plaintiff 'should describe the subject matter of the trade secret *with sufficient particularity to separate it from* matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.' " (Some italics added.) Moreover, the court also cited to *Diodes* as support for the principle it was enunciating, thus confirming that it meant no more than that the level of particularity must be adequate to permit the information to be distinguished from matters already known. (See also *Advanced Modular, supra*, 132 Cal.App.4th at p. 836 [when "the alleged trade secrets consist of incremental variations on, or advances in the state of the art in a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field"].)

The trial court's reliance on *Advanced Modular* to support its finding that Brescia's designation was inadequate was incorrect. In so doing, the trial court took language of *Advanced Modular* out of context. The litigation in *Advanced Modular* centered on whether the trade secret designation was sufficiently particularized to permit the defendant to distinguish the purported trade secrets from matters known to skilled persons in the complex technology of the sputtering industry. The defendant presented expert witness declarations to show that it was not. The plaintiff countered with its own expert witness declarations to show that the alleged secrets were not commonly known in the sputtering industry and that the defendants' experts were "obtuse" in claiming "confusion over the nature or boundaries of the alleged trade secrets." (*Advanced Modular, supra*, 132 Cal.App.4th at p. 831.) In that context, the court found the plaintiff's designation adequate, because, among other things, the plaintiff "described how it believes the combination of [the features of its alleged trade secrets] distinguish the alleged trade secrets from the prior art, or matters within the general knowledge of persons in the sputtering industry." (*Id.* at p. 836.)

■ The court's discussion, however, cannot be read as requiring such an explanation in every case. (See 1 Browne, Cal. Business Litigation (Cont.Ed.Bar 2007) § 4.17, p. 173 [noting plaintiff's showing in *Advanced Modular* was "well beyond normal practice" in producing expert declarations stating that designation was adequate].) The essential lesson of *Advanced Modular* is the flexibility of the reasonable particularity standard. It "means that the plaintiff must make some showing that is reasonable, i.e., fair, proper, just and rational [citation], under all of the circumstances to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information,

and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits." (*Advanced Modular, supra*, 132 Cal.App.4th at p. 836.) Further, the designation should be liberally construed, and reasonable doubts about its sufficiency resolved in favor of allowing discovery to go forward. Under this flexible standard, absent a showing that the identification of the alleged trade secret alone lacks the particularity necessary to serve the statutory purposes, the trade secret claimant need not specify how the secret or its elements are distinguishable from matters known to skilled persons in the field.

Respondents contend that section 2019.210 permits a court to determine, as a matter of law, whether the alleged trade secret exists, and that, therefore, trade secret claimants must be required in all cases to show how the alleged trade secret is distinguished from things already known to skilled persons in the field. They urge that such an interpretation of section 2019.210 is required to serve the purposes of the statute.

Respondents misapprehend the manner in which section 2019.210 achieves its goals. One of the statutory goals is to encourage prefiling investigation and discourage frivolous trade secret claims. The statute, however, does not create a procedural device to litigate the ultimate merits of the case—that is, to determine as a matter of law on the basis of evidence presented whether the trade secret actually exists. The statutory method is more modest—it requires only that the trade secret claimant "*identify* the trade secret with reasonable particularity" before obtaining discovery. (*Ibid.*, italics added.) The necessity of identifying the alleged trade secret encourages the claimant's preliminary investigation and early determination whether the claim is colorable. True, the claimant's inability to describe the alleged trade secret with reasonable particularity puts the action in jeopardy—trade secret discovery is precluded, and, as a result, the plaintiff may be unable to withstand a summary judgment motion or to prove the case at trial. But that practical result does not make section 2019.210 a substitute for a summary judgment motion or a trial. The statute simply imposes a precondition to discovery—one that is no more onerous than reason requires in promoting the statutory goals. In the same way, the statute discourages the use of litigation to discover competitors' trade secrets, because such discovery will not be available absent the requisite, reasonably particularized identification.

The two most important goals of the statute—the ones identified in *Diodes, supra*, 260 Cal.App.2d 244—are to help the court shape discovery, and to give the defendant the opportunity to develop defenses. Obviously, a reasonably particularized description aids the court in determining the scope of relevant discovery and fashioning protective orders. It also provides the

opponent with notice of what information has allegedly been misappropriated, thus permitting the investigation of available defenses. Absent a showing that elaboration is required to serve these goals, section 2019.210 should not be construed to require the claimant to explain why the alleged trade secret differs from matters already known in the industry.

■■■ Pointing to Brescia's failure to sufficiently identify his alleged trade secrets before the August 2007 designation, respondents argue that such obstructionist tactics will be encouraged if trade secret claimants are not required in every case to distinguish their alleged trade secrets from matters already known in the field. We agree that the trial court correctly found Brescia's pre-August 2007 attempts to identify his alleged trade secrets inadequate. But Brescia's earlier failures to comply with section 2019.210 did not relate to an inability to explain how his alleged secrets differed from matters already known. They related to his attempts to evade a reasonably particularized identification by referring to the generic description in his cross-complaint and voluminous documents already disclosed in discovery, a tactic that can be prevented by requiring a clear, particularized description of the alleged trade secret sufficient to meet the statutory goals of section 2019.210. Moreover, section 2019.210 is part of the Civil Discovery Act (Code Civ. Proc., § 2016.010 et seq.), and the court has recourse to discovery sanctions as appropriate to compel compliance with section 2019.210, including issue, evidentiary, or terminating sanctions. (See Code Civ. Proc., § 2023.030.) Indeed, given the importance to trade secret litigation of requiring a reasonably particular identification of the trade secret, such sanctions may be especially appropriate in certain cases to vindicate the statutory goals of section 2019.210. And we emphasize that when the nature of the alleged trade secret or the technical field in which it arises makes a detailed description alone inadequate to permit the defendant to learn the limits of the secret and develop defenses or to permit the court to understand the secret and fashion discovery, the court may require an explanation of how the alleged trade secret differs from matters known to skilled persons in the field as necessary to satisfy those needs. But absent such necessity, requiring such an explanation in every case is unreasonable.[2]

---

[2] Respondents contend that the reasoning of *IDX Systems Corp. v. Epic Systems Corp.* (7th Cir. 2002) 285 F.3d 581 (*IDX*) supports an interpretation of section 2019.210 that would require a showing in every case of how the alleged trade secret differs from prior art. We disagree. The issue in *IDX* was whether, in opposing summary judgment on its trade secret claim, the plaintiff had adequately demonstrated that its alleged trade secret met the definition of a trade secret under the Uniform Trade Secrets Act. The alleged trade secret related to the plaintiff's computer software package for managing medical office finances. The Seventh Circuit affirmed the district court's grant of summary judgment, concluding in part: "According to IDX, 'a 43-page description of the methods and processes underlying and the inter-relationships among various features making up IDX's software package' is specific enough [to meet the definition of a trade secret]. No, it isn't. These 43 pages describe the

## C. *The Adequacy of Brescia's Designation*

 Brescia's August 2007 trade secret designation meets the reasonable particularity standard of section 2019.210. Brescia named two alleged trade secrets: his pudding formula and his manufacturing process. He claimed that his formula produced a unique high protein, low carbohydrate pudding unlike any other healthy alternative pudding on the market. He particularly described the details of his pudding formula as of the last quarter of 2003, listing the 15 specific ingredients by common name and the percentage of the total pudding. He also listed the same 15 ingredients by their supplier and brand name. He particularly described each step in the mixing, testing, and code marking of the pudding.

Brescia's showing was certainly adequate to permit respondents to investigate whether his alleged trade secrets were within the public domain and prepare a defense. They do not contend otherwise. Indeed, they have already presented evidence, in the form of records from the Patent and Trademark Office relating to Christopher Scinto's patent application, to argue that Brescia's alleged trade secrets are matters of common knowledge in the commercial food science industry. Contrary to respondents' argument in the trial court, these records (which stated that Scinto's formula and ingredients were not patentable because they were obvious to persons of ordinary skill in the industry) do not demonstrate a need for Brescia to explain how his formula differs from matters already known. In the first place, although the court could properly take judicial notice of the existence of the records to show that Scinto's patent application was denied, it could not take judicial notice of the truth of the findings stated in the records, i.e., that Scinto's formula and ingredients were, in fact, obvious to persons of ordinary skill in the industry. (See *Kilroy v. State of California* (2004) 119 Cal.App.4th 140,

---

software; although the document was created for this litigation, it does not separate the trade secrets from the other information that goes into any software package. Which aspects are known to the trade, and which are not? That's vital under the statutory definition. Likewise, IDX's tender of the complete documentation for the software leaves mysterious exactly which pieces of information are the trade secrets. . . . [A] plaintiff must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition." (285 F.3d at pp. 583–584.)

The reasoning of *IDX* is not inconsistent with our interpretation of section 2019.210. First, *IDX* arose in the context of summary judgment. Whether a trade secret plaintiff has introduced sufficient evidence to create a triable issue in a summary judgment proceeding is a different question from whether the claimant has adequately identified the trade secret under section 2019.210 so as to be permitted to proceed with discovery. Second, when, as in *IDX*, the plaintiff's identification "leaves mysterious exactly which pieces of information are the trade secrets" (*IDX, supra*, 285 F.3d at p. 584), our interpretation of section 2019.210 permits the court to require a further definition so as to satisfy the purposes of the statute.

145–148 [14 Cal.Rptr.3d 109] [court may take judicial notice of existence of prior judicial opinion, but not of the truth of the factual findings stated in the opinion].) Second, by producing the documents, respondents demonstrated not that they were unable to discern the boundaries of Brescia's alleged trade secret formula, but rather that they understood and were quite capable of investigating possible defenses. Likewise, the trial court identified no deficiency in the trade secret designation that would hamper its ability to protect the parties' proprietary information or to determine the scope of relevant discovery. Brescia's designation therefore was sufficiently particular to meet the standard of section 2019.210.

Respondents contend that the level of designation required by the trial court was fair, reasonable, and just within the meaning of *Advanced Modular*, even if not applicable for all cases. Respondents note that when they entered the case, it had already been pending for more than two years. By the time of the August 2007 trade secret designation, Brescia represented that he had completed discovery and was ready for trial. Further, Brescia's prior trade secret designations had not adequately described his alleged trade secrets.

Certainly the stage of the litigation, the extent of discovery, and the nature of the prior attempts at trade secret identification were proper factors for the court to consider in determining the level of particularity Brescia could be expected to provide. But those factors alone do not justify requiring Brescia to explain how his alleged trade secrets or individual elements of them, which were described in detail, differ from matters known to skilled persons in the field, absent some showing that respondents would otherwise be unable to determine the limits of the allegedly protected information and develop defenses, or that the court was unable to understand the nature of the alleged secrets and fashion discovery. The nature of the identification required in any particular case need only be reasonable under the circumstances. It cannot be divorced from the statutory goals which it is intended to serve. The identification is to be liberally construed, and reasonable doubts concerning its sufficiency are to be resolved in favor of allowing discovery to commence. (*Advanced Modular, supra*, 132 Cal.App.4th at pp. 835, 836–837.) Under this standard, there is no question that Brescia's August 2007 trade secret designation was sufficient.

III. *Remaining Grounds for Demurrer**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 133.

## DISPOSITION

The judgment is reversed. Brescia shall recover his costs on appeal.

Manella, J., and Suzukawa, J., concurred.

Respondents' petition for review by the Supreme Court was denied June 17, 2009, S172243.