Filed 7/27/16  Gerlach v. Goodman Lumber Co. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANDREA GERLACH et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>GOODMAN LUMBER COMPANY,<br><br>    Defendant and Respondent. | A144642<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-14-276241) |

Jerry Charlifue (Charlifue) and his wife, Christine Charlifue, filed this asbestos-related personal injury action against Goodman Lumber Company (Goodman) after Charlifue was diagnosed with mesothelioma.  Plaintiffs[1] now appeal the trial court's grant of summary judgment in favor of Goodman.  Plaintiffs argue the trial court erred in striking various evidence submitted in opposition to summary judgment.  They also assert they raised a triable issue of fact as to whether Goodman exposed Charlifue to an asbestos-containing joint compound.[2]  We agree and reverse.

## I.  BACKGROUND

Charlifue worked as a taper and painter for U.S. Taping Company (U.S. Taping) between 1972 and 1978.  As a taper, Charlifue's job was to smooth out walls and ceilings

---

[1] Charlifue passed away during the pendency of this appeal and Andrea Gerlach, his successor in interest, has been substituted as an appellant.  We refer to Charlifue, Christine Charlifue, and Gerlach, collectively, as plaintiffs.

[2] Plaintiffs also appeal the trial court's denial of their motion for a new trial.  As we find summary judgment was improperly granted, we need not and do not reach the issue.

where drywall had been hung.  In doing so, Charlifue would apply a joint compound to the drywall and later sand the compound between coats.  For the first three or four years, Charlifue worked with a dry powdered joint compound that he mixed with water. Pouring the powdered mixture released dust, which Charlifue would later clean up with a broom.  Plaintiffs assert these joint compounds contained asbestos, and that they were purchased from Goodman.  In or around 1976, Charlifue began working with premixed joint compounds.

In 2014, after Charlifue was diagnosed with mesothelioma, plaintiffs filed this personal injury action against Goodman.  Goodman moved for summary judgment on several grounds, including that plaintiffs' discovery responses showed they could not prove Charlifue was exposed to an asbestos-containing product supplied by Goodman. According to Goodman, Charlifue admitted he could not identify any brand of joint compound he purchased from Goodman between 1973 and 1976.  Goodman also asserted Charlifue did not see the word "asbestos" on any packaging, and he had no knowledge of whether the joint compound products contained asbestos.

In opposing summary judgment, plaintiffs submitted Charlifue's deposition testimony, in which he recalled purchasing various brands of joint compound from Goodman, including those manufactured by Kaiser Gypsum Company (Kaiser Gypsum) and United States Gypsum Company (US Gypsum or USG).  Charlifue remembered first going to Goodman during his first year working at US Taping, and he often went more than once a week.  While there, he would usually pick up at least 20 bags of joint compound, which were 25 to 35 pounds each.  As Goodman points out, Charlifue's testimony was sometimes vague as to time.  For example, at one point, Charlifue stated he did not have a specific recollection of going to Goodman in 1972, but he was "sure" he did.  At another point, Charlifue stated:  "As the years went by, which is about maybe two or three years down the road, . . . then I started remembering that, yes, it was USG and Kaiser Gypsum that we started using."  Charlifue also admitted to purchasing joint compound from other retailers, but asserted "most of our materials came out of

2

Goodman's Lumber because it was on the way home and so was Kelly-Moore [and] Sherwin-Williams."

In an attempt to establish the products in question contained asbestos, plaintiffs proffered the deposition testimony of George Kirk and Howard Bowman, the corporate representatives for Kaiser Gypsum and US Gypsum, respectively, as well as a declaration by William Ewing, an industrial hygienist. Kirk stated Kaiser Gypsum began its asbestos replacement program in about 1973 and did not phase asbestos out of all of its products until 1976. Bowman testified US Gypsum did not cease manufacturing asbestos-containing joint compounds until 1976. Ewing opined it was "more likely than not any joint compound materials that were supplied by Goodman . . . to U.S. Taping before 1976 were asbestos-containing."

Plaintiffs also requested the trial court take judicial notice of a patent for an asbestos-free joint compound issued to US Gypsum in 1975. US Gypsum applied for the patent in 1973. Plaintiffs now assert the "patent indicated it was the first ever application for a[n] asbestos-free joint compound to be produced in the United States."

The trial court initially held a hearing on the motion for summary judgment on October 8, 2014. The court heard argument, but continued the hearing so plaintiffs could depose Goodman's owner and the corporate representative of Georgia-Pacific Corporation, another joint compound manufacturer. The hearing resumed on October 14, 2014. The court ultimately granted the motion for summary judgment, finding Goodman had sustained its initial burden and plaintiffs failed to present evidence creating a triable issue as to whether Charlifue was exposed to asbestos-containing products or materials attributable to Goodman. The court sustained Goodman's objections to much of the evidence proffered by plaintiffs, including its objections to the Kirk and Bowman depositions, the Ewing declaration, and the US Gypsum patent.

Plaintiffs subsequently moved for a new trial. The motion was denied. This appeal followed.

## II.  DISCUSSION

### A.  *Evidentiary Issues*

Plaintiffs' primary argument on appeal is that the trial court erred in granting Goodman's objections to various evidence.  Plaintiffs contend this evidence, which the trial court refused to consider, shows there is a triable issue as to whether Charlifue was exposed to asbestos from joint compound sold by Goodman.  Specifically, plaintiffs argue the trial court erred in sustaining the objections to (1) the deposition testimony of Kirk and Bowman, (2) the US Gypsum patent and patent application, and (3) the Ewing declaration.  We review the trial court's evidentiary rulings on summary judgment for abuse of discretion.  (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852.)  We conclude the deposition testimony and patent materials were properly struck, but the trial court erred in sustaining Goodman's objections to the Ewing declaration.

#### 1.  Kirk and Bowman Depositions

All parties agree the Kirk and Bowman depositions were taken in other matters, with Kirk testifying as the corporate representative for Kaiser Gypsum and Bowman as the corporate representative for US Gypsum.  Goodman objected to the depositions on hearsay grounds, among other things.  We conclude the trial court did not abuse its discretion in sustaining these hearsay objections.

Evidence Code section 1292 concerns former testimony offered against a person not a party to the former proceeding.  The statute provides:  "Evidence of former testimony is not made inadmissible by the hearsay rule if: [¶] (1) The declarant is unavailable as a witness; [¶] (2) The former testimony is offered in a civil action; and [¶] (3) The issue is such that the party to the action or proceeding in which the former testimony was given had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which the party against whom the testimony is offered has at the hearing."  (Evid. Code, § 1292, subd. (a).)

As the proponents of Kirk's and Bowman's deposition testimony, plaintiffs bear the burden of showing this evidence falls within an exception to the hearsay rule.  (*Gatton v. A.P. Green Services, Inc.* (1998) 64 Cal.App.4th 688, 693.)  Plaintiffs failed to

meet that burden. They concede they made no showing Bowman was unavailable. As to Kirk's availability, plaintiffs merely point to the trial court's statement that it could speculate that Kirk is dead.

Even if plaintiffs had presented evidence that both Kirk and Bowman were unavailable—they did not—there is no indication any of the parties to Kirk's and Bowman's depositions had an interest or motive similar to Goodman's in this action. "Former testimony from a deposition rather than a trial is problematic since depositions generally function as a discovery device where examination of one's own client is typically avoided so as not to reveal a weakness in the case or to prematurely disclose a defense." (*Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1150.) Thus, while plaintiffs' claims might be similar to the claims at issue in the former proceedings, the defendants in the former proceedings did not have a similar motive to cross-examine Kirk and Bowman as did Goodman in this case.

On reply, plaintiffs argue there were multiple defendants present during Kirk's deposition and some of these defendants may have had a motive similar to Goodman's. But it is unclear from the record what the relevant period of exposure was in these other cases. In any event, plaintiffs' speculation about the motives of the other defendants represented at the deposition is insufficient. Plaintiffs have the burden to establish the admissibility of hearsay evidence, and they have not presented any facts, either below or on appeal, demonstrating how Goodman's interests align with those of any of the parties to the former proceedings.

### 2. Joint Compound Patent

The trial court also properly refused to take judicial notice of the compound patent materials, as this evidence constitutes inadmissible hearsay. In sustaining Goodman's objections to the patent, the trial court explained: "I can always take judicial notice that there was a patent. But I don't have to take judicial notice of the content for the truth of the matter asserted. So then the question is why would I even need to take judicial notice if I'm not going to consider it?"

5

The trial court was correct. While judicial notice may be taken of the patent as an official act of the United States government (Evid. Code, § 452, subd. (c)), and while judicial notice may be taken of the fact that certain statements were made in the patent, it is improper to take judicial notice of the truth of the statements themselves. (*Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 483.) Yet it appears the only reason plaintiffs sought to introduce the patent is because it purportedly makes factual assertions regarding when asbestos-free joint compound first became commercially available in the United States. The fact of when asbestos-free joint compound first became commercially available is not a proper matter for judicial notice.

Plaintiffs now argue the fact a patent for an asbestos-free joint compound was issued to US Gypsum in 1975 is relevant to the issue of whether they could prove Charlifue was exposed to asbestos from US Gypsum's joint compound sold between 1972 and 1978. But even if we were to ignore any factual assertions in the patent, the fact that US Gypsum applied for a patent for an asbestos-free joint compound in 1973 does not prove an asbestos-free alternative was unavailable before that date. There may have been features of the joint compound other than its lack of asbestos that made it novel.

The case law on which plaintiffs rely does not help their case. In *Brescia v. Angelin* (2009) 172 Cal.App.4th 133, the court held it was proper to take judicial notice of the existence of records showing a patent application was denied, but it was improper to notice the truth of the findings stated in the records, i.e., that a formula and ingredients were obvious to persons of ordinary skill in the industry. (*Id.* at pp. 151–152.) Likewise, here, it was improper to take judicial notice of any assertions in the patent that US Gypsum's joint compound was novel because it did not use asbestos. The other case cited by plaintiffs, *South Shore Land Co. v. Petersen* (1964) 226 Cal.App.2d 725, involved a different type of patent, specifically a patent from the United States confirming a Spanish-Mexican grant of a tide lot. (*Id.* at p. 743.)

6

### 3. Ewing Declaration

We reach a different conclusion as to Ewing's declaration. Ewing has practiced industrial hygiene for 30 years with an emphasis on asbestos exposure in facilities. He has conducted asbestos investigations in over 2,000 industrial, commercial, institutional, and governmental buildings; measured asbestos exposures to workers in the building trades; and researched the published literature. In his declaration, Ewing concludes: "[I]t is my opinion, based upon my training, testing, and review of materials, that more likely than not any joint compound materials that were supplied by Goodman . . . to U.S. Taping before 1976 were asbestos-containing."

The trial court sustained Goodman's objections to the declaration, stating at a hearing: "[E]xperts can rely upon hearsay and inadmissible evidence if there's a proper foundation. What I found with Mr. Ewing is, one, I didn't see a foundation that he had the expertise to even opine. [¶] And . . . . I found him to be a reader, that he was just reading materials and saying, 'This is what it is.' [¶] So, the Court, as a gatekeeper . . . . had a problem with the foundation. Not that I disagreed with it, I had a problem that it appeared to be reading to me." When plaintiffs' counsel argued Ewing relied on US Gypsum's patent for an asbestos-free joint compound, the court responded: "Experts can rely upon documents such as this. [¶] My problem with this particular expert is his foundation to opine. I found it to be very generic."

We agree with plaintiffs that the trial court's ruling was an abuse of discretion. "An expert may rely on otherwise inadmissible hearsay evidence provided the evidence is reliable and of the type that experts in the field reasonably rely upon in forming their opinions." (*People v. Yuksel* (2012) 207 Cal.App.4th 850, 856.) An expert declaration in opposition to summary judgment must be liberally construed and need not overflow with detail. (See *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 187–189 (*Garrett* ).) This does not mean, however, such an expert can make conclusory assertions without explanation or support. " '[A]n expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts

7

on which it is based.' " (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 123, 126–127.) An " 'expert opinion based on speculation or conjecture is inadmissible,' " and " '[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770, 771.)

In this case, there was sufficient foundation for Ewing's opinions concerning the asbestos content of the joint compound sold by Goodman. Ewing stated his opinion was partially based on the US Gypsum patent for asbestos-free joint compound. Additionally, Ewing relied on the deposition testimony of various corporate representatives from companies that produced the joint compound sold by Goodman during the relevant period. Ewing's declaration also states his opinion is based on his "training, testing, and review of materials." While some of this foundational evidence might constitute inadmissible hearsay, it was not unreasonable for an expert such as Ewing to rely upon it. And contrary to the trial court's suggestion, it does not appear Ewing was merely a "reader." Ewing's declaration indicates he has significant experience in this area, and he used that experience in evaluating the evidence discussed above.

The case law cited by Goodman does not demand a different result. Both *Garrett*, and *Ganoe v. Metalclad Insulation Corp.* (2014) 227 Cal.App.4th 1577, *reversed* orders sustaining objections to expert declarations submitted in opposition to summary judgment. (*Garrett*, *supra*, 214 Cal.App.4th 173, 190*; Ganoe*, at p. 1586, fn. 4.) And neither case enunciates new requirements for expert declarations. We also find *Casey v. Perini Corp.* (2012) 206 Cal.App.4th 1222 (*Casey*), which affirmed the dismissal of an expert declaration, is distinguishable. In *Casey*, the expert opined the plaintiff was exposed to asbestos based on federal regulations providing that buildings constructed before 1980 were built with presumed asbestos-containing materials. (*Id.* at p. 1233.) "Notably absent [wa]s any factual support for the proposition that the challenged jobsites contained asbestos during the relevant time period." (*Ibid.*) In contrast, in the instant action, Ewing's opinion was not predicated on regulatory presumptions, and he actually considered evidence concerning the particular products at issue.

Goodman concedes Ewing was entitled to rely on deposition testimony from a corporate representative concerning the asbestos content of his company's products. But Goodman argues the corporate representative provided conflicting testimony on this issue in different cases, and Ewing failed to review certain testimony suggesting the company's joint compounds were asbestos-free by September 1973. Goodman further challenges Ewing's reliance on the US Gypsum patent, and argues there was no basis for him to conclude all 82 different manufacturers of joint compound used asbestos during the relevant period. These arguments might undermine the weight of Ewing's opinion, but they do not render his declaration inadmissible. Additionally, as an expert with training in this area, Ewing could properly rely on the US Gypsum patent and other types of inadmissible evidence in forming his opinion.

**B.  *Summary Judgment***

Turning to the merits, we conclude summary judgment was inappropriate because plaintiffs raised a triable issue as to whether Charlifue was exposed to asbestos from the products sold by Goodman.

We review the trial court's decision to grant Goodman's motion for summary judgment de novo. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163.) Summary judgment must be granted if all the papers and affidavits submitted, together with "all inferences reasonably deducible from the evidence" and uncontradicted by other inferences or evidence, show "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) Where, as here, the defendant is the moving party, he or she may meet the burden of showing a cause of action has no merit by proving one or more elements of the cause of action cannot be established. (See *id.*, subd. (o)(1).) Once the defendant has met that burden, the burden shifts to the plaintiff to show the existence of a triable issue of material fact as to that cause of action. (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 583.) We must consider all evidence in the light most favorable to the nonmoving party, which in this case is plaintiffs. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

9

Goodman argues it successfully shifted the burden based on Charlifue's deposition testimony and plaintiffs' factually devoid discovery responses. Goodman further argues plaintiffs failed to raise a triable issue as to whether Charlifue was exposed to an asbestos-containing product purchased from its stores. On this last point we disagree. Charlifue's deposition testimony indicates he regularly purchased joint compound from Goodman during the relevant period. As defendant points out, Charlifue sometimes had problems recalling specific dates, and also remembered shopping at other hardware stores. But viewing Charlifue's deposition testimony in the light most favorable to plaintiffs, as we must, we conclude it is sufficient to show Goodman may have supplied joint compound with which Charlifue worked during the relevant period. Moreover, Ewing's declaration, which is discussed above, suggests any joint compound supplied by Goodman during the relevant period must have contained asbestos.

The instant action is distinguishable from *Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582. In that asbestos personal injury case, the court affirmed the grant of summary judgment in favor of Kaiser Gypsum because the plaintiff could not say exactly when he encountered Kaiser Gypsum's joint compound. (*Id.* at p. 596.) The date of the exposure was important because Kaiser Gypsum had introduced evidence its joint compounds were asbestos-free after 1976. (*Ibid.*) In contrast, here, Charlifue testified he remembered first going to Goodman to purchase joint compound in 1972, and Ewing opined any joint compound supplied by Goodman prior to 1976 would have contained asbestos.

For these reasons, we conclude the trial court erred in granting summary judgment in favor of Goodman.

## III. DISPOSITION

The judgment is reversed with directions to the trial court to vacate the order granting summary judgment. Plaintiffs are entitled to recover costs on appeal.

_____
Margulies, J.

We concur:

_____
Humes, P.J.

_____
Banke, J.

A144642

11